## Ellis B. Baily, Plff. in Err., *v.* David Shroyer.

A buyer of bank stock promised, as part of the consideration of the sale to him, that he would assume all liabilities of the seller, in respect of the stock.   The bank afterwards failed, and the Comptroller of the Currency ordered an assessment on the shares.   The seller notified the buyer to defend, but, as he did not do so, the seller paid the assessment and sued the buyer for reimbursement.   *Held*, that he was entitled to recover.   The promise was valid, although not in writing.   The buyer, having been notified to defend, could not object that the seller might have resisted the assessment as outlawed.

(Decided October 19, 1885.)

Error to the Common Pleas of Greene County to review a judgment on a verdict for plaintiff in an action of assumpsit. Affirmed.

Shroyer, the plaintiff below, and Baily, the defendant,

NOTE.—Likewise, the transferee of the shares may, by agreement with the corporation, assume the liability of his transferrer.   Citizens' & M. Sav. Bank & T. Co. v. Gillespie, 115 Pa. 564, 9 Atl. 73.   The vendor, who has sold subject to an agreement of the vendee to pay, may recover when

were both, in January, 1874, stockholders in the First National Bank of Waynesburg. During that month the stockholders voted to quit business and go into liquidation, and took steps for that purpose. Thereupon, Baily bought Shroyer's shares, nominally for himself, but really for Flenniken, the cashier. Four years afterward, the bank's affairs passed under the direction of the Comptroller of the Currency at Washington, who, in due course of proceedings, ordered an assessment upon all who were stockholders on January 13, 1884; and under this order Shroyer, after notifying Baily, etc., paid $320, the assessment upon the shares he had sold to Baily. He then brought this action to recover the amount from Baily; alleging that it was a part of the agreement between the two, for the sale of the stock, that Baily should take Shroyer's place in the bank, bear the losses, stand in Shroyer's shoes, and relieve him from all liability and responsibility; also that he should be entitled to any future dividends. Baily denied any such agreement, and declared that he never agreed to pay Shroyer anything for the stock except the purchase price, $2,040; which it was admitted he had paid. It was also claimed in Baily's behalf that the agreement, even if made as alleged, would be void under the statute of frauds as a promise to answer for the debt of another, yet not in writing; and that any cause of action upon it would be barred, because at the time when Shroyer made the payment under the Comptroller's order the receiver's right of action had become barred by lapse of time, and Shroyer was not compellable to pay. The court charged and the jury found in favor of Shroyer, on all the points; and Baily brought error to review this judgment.

*P. A. Knox* and *R. F. Downey,* for plaintiff in error.—I. As to the agreement being void because not in writing: The alleged

---

compelled to liquidate assessments, as is held in BAILY v. SHROYER. Trevor v. Perkins, 5 Whart. 244. But the corporation, which is given no charter authority to recover from a transferee, cannot take advantage of such an agreement, even though the transferee, has paid some of the assessments. Pittsburgh & B. Coal, Coke & I. Co. v. Otterson, 4 W. N. C. 545.

Where the leading purpose of a promise is to subserve some interest or object of the promiser himself, such promise is not within the statute of frauds; and this, though the effect of the promise is to pay or discharge the debt of another. Elkin v. Timlin, 151 Pa. 491, 25 Atl. 139; Dunlevy's Estate, 10 Pa. Co. Ct. 454, 48 Phila. Leg. Int. 451; Young v. Peeling, 1 York Legal Record, 79.　　. . .　.

verbal promise of Baily did not extinguish the liability of
Shroyer to the First National Bank, or its creditors. The bank
did not give up its claim on him and accept Baily as its debtor in
his place. The creditors of the bank did not relinquish their
claims against Shroyer and rely upon Baily or his alleged prom-
ise, for payment of their claims. The assessment made upon
Shroyer was for the purpose of paying debts contracted before
the bank quit business, and whilst Shroyer was the owner of
the stock and was receiving and using the dividends declared by
the bank. The sale to Baily was after the bank had ceased to
do business and had gone into liquidation, and after Shroyer
and other stockholders, holding more than two thirds of the stock
of the bank, had unanimously resolved that said bank should
on that date, January 13, 1874, quit business and go into liqui-
dation. The stock was never transferred on the books of the
bank to Baily, but was transferred to Flenniken, for whom
Baily bought it, under and by virtue of the power of attorney
given May 9, 1874, to enable Baily to transfer it to Flenniken.
If there was a consideration for the alleged verbal promise of
Baily, that would not make him liable here. As there can be no
binding agreement between parties without a consideration, to
hold that wherever there is a consideration for an oral promise
to pay the debt of another, such promise is taken out of the
statute, is to set aside the statute itself. Smith, Cont. 6th ed.
101, 102; Forth v. Stanton, 1 Wms. Saund. 211; Hodgson v.
Anderson, 3 Barn. & C. 855; Taylor v. Hilary, 1 Cromp. M. &
R. 741; Browning v. Stallard, 5 Taunt. 450; Green v. Cress-
well, 10 Ad. & El. 453; Tomlinson v. Gell, 6 Ad. & El. 564;
Maule v. Bucknell, 50 Pa. 39; Townsend v. Long, 77 Pa. 149,
18 Am. Rep. 438.

II. As to the statute of limitations: The national banking
act not having prescribed any limit to the liability of stockhold-
ers of national banks for debts of such banks, that matter has
been left to be regulated by the several state statutes of limita-
tion, or by the law of the forum in which such individual liabil-
ity is sought to be enforced. It cannot be supposed that Con-
gress, by its failure to provide any limitation, meant that such
liability should be perpetual; nor can it be maintained that the
state statutes as to the limitation of actions cannot be interposed
by any stockholder of a national bank, in the absence of any
legislation by Congress on that subject. The several state stat-

utes in regard to usury were held not to apply to suits by and against national banks simply because Congress had regulated that matter by statute in the national banking act. If Congress had failed to legislate on the subject of usury, as it has failed to do in regard to the limitation of suits and actions against stockholders of national banks, it is clear that the several state statutes in regard to usury would have applied to suits by and against national banks. State statutes and laws can only be suspended or set aside by constitutional enactments of Congress upon the same subject. Leffingwell v. Warren, 2 Black, 599, 17 L. ed. 261; M'Cluny v. Silliman, 3 Pet. 270, 7 L. ed. 676; Ross v. Duval, 13 Pet. 45, 10 L. ed. 51; Amy v. Dubuque, 98 U. S. 470, 25 L. ed. 228; Carrol v. Green, 92 U. S. 509, 23 L. ed. 738.

The decision and cases cited in Carrol v. Green make it clear that our act of 1713 furnished to Shroyer a complete bar to the assessment ordered April 12, 1882, and which he paid voluntarily, on May 14, 1884, more than ten years after his liability for the debts of the bank accrued. And Shroyer was entitled to set up against the Comptroller and receiver, not only the act of 1713, but also the act of the 28th of March, 1867 (Purd. 933, pl. 27), which is designed especially for the protection of stockholders.

Hence, it seems clear that, in this state, stockholders of national banks cannot be legally made liable to suits or actions for debts of such banks brought more than six years from the time the right of action against them accrued.

Now, when did a right of action accrue against Shroyer and other stockholders of the First National Bank for the debts of the bank existing on January 13, 1874, when the stockholders ceased to do business, and went into voluntary liquidation? It certainly began on said January 13, 1874, immediately after the adoption of the resolution to quit business and go into liquidation. The stockholders were then fixed for the then indebtedness, and it was then the duty and privilege of the Comptroller of the Currency to assess the stockholders to an amount sufficient, with the assets, to pay the then indebtedness. It was not in the power of the Comptroller of the Currency to override the statute of limitations and deny its benefits to the stockholders, by neglecting to ascertain the indebtedness, and by refusing to make the necessary assessment until eight or ten years had

elapsed from the time the stockholders became fixed for the indebtedness. Even if the value of the assets, or the amount of the debts, could not at once be ascertained by the Comptroller and committee or receiver (and there is no proof of any such fact in this case), yet a period of six years from said January 13, 1874, afforded ample time to ascertain all the necessary facts as to the condition of the bank, to make the necessary assessments, and to begin suits therefor against those stockholders who might refuse to pay. And creditors of the bank surely had the right, by bill in equity, mandamus, or otherwise, to compel the Comptroller to thus act within the six years, and, having failed to exercise such right, they could not complain of any stockholder relying upon the bar of the statute. Hence, we maintain that Shroyer became fixed for the debts of the bank on January 13, 1874; that, at any time during the six years immediately following that date, he was legally liable to assessments by the Comptroller, and to suits for his proper share thereof; that beyond that period he was not so liable; that he was under no legal obligation to pay the assessment of 16 per cent, $320, ordered by the Comptroller on April 12, 1882, and the collection of which was suspended until April, 1884; that his payment thereof on May 14, 1884, was a voluntary payment which did not, in any manner, impose any duty upon Baily to repay him or give him any right to bring this action.

*J. B. Donley* and *Jas. E. Sayers,* for defendant in error:—
I. As to the necessity of a writing:

The statute of frauds does not require a promise to be in writing where it is, in effect, to pay the promisor's own debt, although that of a third person be incidentally guaranteed. It applies to the mere promise to become responsible, but not to actual obligations. Taylor v. Preston, 79 Pa. 436; Malone v. Keener, 44 Pa. 107.

The main object and purpose of the defendant in making the agreement were to subserve a purpose of his own, and not to answer for Shroyer. In such case the agreement is not within the statute of frauds. Arnold v. Stedman, 45 Pa. 186; Landis v. Royer, 59 Pa. 95; Emerson v. Slater, 22 How. 28, 16 L. ed. 360.

Again; the stock was a fund passing from Shroyer to Baily charged and pledged for the payment of the debts of the bank,

and Baily's agreement when he took the stock to stand in Shroyer's shoes and pay the liabilities or assessments was not required to be in writing to bind him for the payment of assessments. In such cases the agreement need not be in writing; for the promise is considered as not to pay the debt of another, but the debt of the property which has come to the promisor's hands.

The promise may be unaffected by the statute though the original debt remains, if the promisor has received a fund pledged, set apart, or held for the payment of the debts. Taylor v. Preston, 79 Pa. 436; Maule v. Bucknell, 50 Pa. 39; Nelson v. Boynton, 3 Met. 396, 37 Am. Dec. 148; Townsend v. Long, 77 Pa. 143, 18 Am. Rep. 438. It matters not, therefore, that the plaintiff was held liable for the assessment by the Comptroller, as between the contracting parties. Baily is under the superior obligation, and his agreement to pay the assessment is not within the statute of frauds.

II. As to the statute of limitations:

When the bank went into voluntary liquidation January 13, 1874, the president and cashier were appointed by the stockholders, of whom Baily was one, to close up its affairs. On June 10, 1876, the stockholders appointed the defendant below one of a committee to take charge of the bank, and this committee continued in charge of the affairs of the bank until the appointment of a receiver by the Comptroller of the Currency. The president and cashier and the committee managed the affairs of the bank, entirely and exclusively, during a period of more than four years from the date of liquidation. The stock of the bank was selling above par for at least a part of the time, as is shown by the sale of Baily's stock to Flenniken, the cashier of the bank, at a premium of 10 per cent, including the stock purchased by Baily of Shroyer.

On September 9, 1878, an account was taken of the condition of said bank by the Comptroller of the Currency, and an assessment of 20 per cent was then found necessary and ordered to pay the debts of the bank. On April 12, 1882, a second assessment of 16 per cent was ordered, for the reason, as stated by the Comptroller, that, "since the date of said order (September 9, 1878), liabilities of the bank not proved to exist at the date of said order have been allowed, which, with attendant expenses and interest, have accumulated to such an extent as

to render a new accounting necessary." Notice was given to the stockholders of this second assessment by the receiver, April 20, 1882, but its collection was suspended by the Comptroller until April 19, 1884, at which time notice was given by the receiver under the direction of the Comptroller that the said assessment must be paid on or before the 5th of May, 1884. Shroyer, after notice to Baily that he had been called upon to pay the assessment on the stock sold to him, and a request to Baily that he would pay the same under the agreement made between them at the time the stock was sold by Shroyer to Baily, and a refusal on the part of Baily to pay, paid the assessment on May 14, 1884. This suit was then brought, May 20, 1884, to enforce the parol agreement made between the parties hereto at the time the stock was sold.

Now, the statute of limitations, under all the decisions, begins to run from the time the right of action accrues. We submit that in this case the right of action accrued at the time Shroyer paid the assessment upon the demand of the receiver; or, at the earliest, the statute did not begin running in favor of the stockholders until the time when the Comptroller, through the receiver, gave notice of the assessment with a demand for its payment. The receiver is the instrument of the Comptroller. It is for the Comptroller to decide when and for how much the assessment shall be made, and what claims shall be included in the assessment. His action is conclusive, and cannot be questioned. It is indispensable, and is an essential preliminary to a suit against a shareholder. Kennedy v. Gibson, 8 Wall. 498, 19 L. ed. 476; Casey v. Galli, 94 U. S. 673, 24 L. ed. 168; Germania Nat. Bank v. Case, 99 U. S. 628, 25 L. ed. 448. The right of action, therefore, does not accrue against the stockholders upon an assessment until the Comptroller has acted, and therefore the statute of limitations does not begin to run in favor of the stockholders until such time. The statute runs, not against the debt, but its remedy, and, of course, cannot begin to operate until a remedy exists. Pittsburgh & C. R. Co. v. Byers, 32 Pa. 22, 72 Am. Dec. 770.

There are other reasons why this plaintiff in error cannot avail himself of the plea of the statute of limitations in this case. He has been treating the case as if the Comptroller had acted negligently and with laches in the matter, and that, therefore, Shroyer should not recover of Baily. How could Shroyer

save himself from the Comptroller? He had no cause of action against Baily until he was compelled to pay the receiver. The debt was that of Baily, as the jury found under the agreement. Shroyer was not bound to endure the expense of a lawsuit to prevent the recovery of the assessment from him, or, if sued, to plead the statute of limitations. He notified Baily that the assessment had been made, and requested him to pay it, which was all he was bound to do.

PER CURIAM:

The alleged promise of the plaintiff in error was not to pay the debt of another, but to pay an obligation which he assumed to pay as part of the purchase money for stock sold and transferred to him. His main purpose and object were to subserve his own interest. A part of the consideration of his purchase was the assumption of the stock subject to all contingent liabilities charged thereon, and which he expressly agreed to discharge. The case is not that of a separate and distinct obligation. We think his position does not permit him to successfully invoke the statute of limitations. Although duly notified, he did not protect and defend his vendor against the assessment. The latter, having been required to pay it, brought this suit in time.

Judgment affirmed.