6725

### MAN v. BOYKIN.

1. CORPORATIONS—STOCK.—Where corporations are permitted to increase their capital stock mere irregularities will not invalidate the issue. Held here, that failure to file in office of Secretary of State certificate of issue does not invalidate it.

2. IBID.—IBID.—Under sec. 1894, of Code 1902, no transfer of corporate stock shall be valid, except as between the parties, until the same shall have been regularly entered on the books of the corporation, which must show the date of surrender, the number of certificate and date of reissue, or something to show a proper transfer. If this is not done, the original holder of the stock is liable to the creditor of the bank, but he has his action against the transferee for reimbursement.

3. CONSTITUTIONAL LAW—BANKS.—In absence of legislation or surrender of charter, a bank chartered under the Constitution of 1868 operates under that Constitution and the liability of stockholders is fixed by that Constitution.

Mill v. Springs, 56 S. C., 538, criticized.

4. JUDGMENT—BANKS—STOCKHOLDERS.—In cases of insolvent banks the better practice is to enter judgment against the stockholders for the full amount of their liability and to make assessments thereon from time to time as is found necessary.

Before HYDRICK, J. Kershaw, January, 1907. Modified.

Action by Nellie C. Man, administratrix of estate of John C. Man, against N. C. Boykin, administrator of estate of E. Miller Boykin, and the assignees and agents of creditors of the Farmers' and Mechanics' Bank. From Circuit decree, defendant stockholders and plaintiff appeal.

*Messrs. Smith & Kirkland,* for plaintiff-appellant and respondent, cite: *Failure to file certificate of increase of stock in Secretary of State's office does not invalidate it:* 26 Ency., 832, note; 139 U.S., 417; 95 N.Y., 295; Cook on Stock, etc., sec. 291; 95 U. S., 665; 96 U. S., 328; Mor. Priv. Corp., sec. 763; Beach on Priv. Corp., sec. 142. *If no minutes of a corporation meeting have been kept oral evidence is admissible to show what was resolved:* 74 Mich., 226; 16 Am. St. R., 633, 263; 38 Minn., 138; 19 N. J. Eq., 402; Pas. Eq. Cas., 150; 8 Am. D., 628; Morse on Banks, sec. 679; Beach on Priv. Corp., sec. 295; Mor. Priv. Corp., sec. 612. *Transfer of stock not entered on books of corporation is void as against creditors:* Rev. Stat. 1893, sec. 1529; Code 1902, sec. 1894; 118 U. S., 655; Thomp. Com. on Corp., sec. 2415; 5 Gray, 373; 51 Wis., 519; 58 Ohio, 294; 2 Thomp. Com. on Law Corp., sec. 2397; 3 Id., sec. 3192; Cook on Corp., sec. 260; 34 Me., 455, 315; 26 Me., 191; 58 Ohio, 294; 71 Ia., 270; 91 Ill., 457; 50 Fed. R., 394; 678 L. R. A., 650.

*Messrs. Buist & Buist,* for Carolina Savings Bank, appellant, cite: *This appellant is not liable to the creditors of the bank, as its stock was sold before failure and transfer entered on books of bank:* Code 1902, secs. 1775, 1894; 2 S. C., 43; 55 S. C., 79; 105 U. S., 222; 11 S. C., 486; 96 Tenn., 252; 48 N. Y., 585; 63 Ala., 585; 17 R. I., 551; 61 Tex.,

114; 63 Fed. R., 898; 3 Biss., 431; 63 N. W., 723; 3 How., 483; 188 U. S., 52; 73 Fed. R., 140.

*Messrs. Simons, Seigling & Cappelman, Burke & Grekman, Nathans & Sinkler* and *William Austin,* for certain stockholders, appellants, cite: *If formalities of statute as to increase of capital stock is not complied with the issue is void:* 2 Cook on Corp., secs. 425, 281, 288; 105 U. S., 143; 73 Ga., 4; 66 Fed. R., 633: *These appellants are not estopped from insisting the issue of stock is invalid:* 13 S. C., 369; 18 Ency., 447; 21 Stat., 23; 139 Mass., 5. *Section 1894 of Code 1902 applies to the transaction in question:* 55 S. C., 79. *If old certificate is sent to company for transfer, he has done all required of him:* 48 Kan., 484; 105 U. S., 222.

*Messrs. Lee & Moise,* for certain transferee stockholders, appellants, cite: *These appellants are not liable as stockholders because the transfer has not been properly made on the books of the corporation:* Rev. Stat., 1893, sec. 1529; Code 1902, 1894; 33 S. C., 543. *Judgment should not be entered for full amount of liability of stockholder but only for his prorata share:* Code of Pro., sec. 266; 13 S. C., 254; 53 S. C., 593; 55 S. C., 86; 2 Morse on Bank, sec. 694, 687; 102 U. S., 42. *Charter of this bank was amended by Constitution of 1895 as to liability of stockholders:* Dartmouth College v. Woodward, 17 U. S.; 11 Stat., 168; Con. 1868, art. 12, sec. 1; 52 S. C., 53; 56 S. C., 538; 52 S. C., 448; 53 S. C., 591. *Assignees and agents should not be paid commissions:* 44 S. C., 74; 48 S. C., 163.

January 14, 1908.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE.   This action, begun in September, 1904, by the plaintiff, Nellie C. Man, on her own behalf and for other creditors who might come in and share the expenses of the suit, grew out of the failure of the Farmers and Merchants Bank of Camden, S. C.   All issues

of law and fact were referred to L. A. Wittkowsky, master for Kershaw county. To his report, filed on September the 12th, 1905, numerous exceptions were taken by certain of the defendants. The report having been modified by the Circuit Court, the plaintiff and several of the defendants appealed to this Court.

As it was said by the Circuit Court, the report of the master is full, clear and comprehensive. In no particular have we been able to find any material error of fact. His conclusions of law, too, are generally well supported, therefore our consideration of the questions raised will be brief.

Numerous exceptions question the validity of a certain issue of stock. It appears that the bank in question was chartered on December 23, 1891, with a capital stock of thirty thousand dollars. From January the 31st to February the 28th, inclusive, 1893, notice was regularly published as required by the Act of 1886, 19 Stat., 542, calling for a meeting of the stockholders on March 2, 1893, to vote upon a resolution for increasing the capital stock from thirty to fifty thousand dollars. The evidence tended to show that the meeting was held accordingly and that the stock was duly increased. No certificate, however, was filed with the Secretary of State. For that reason the defendants seek to have the new stock declared invalid. We do not deem it necessary to go into the statute law of the State on the subject. The authorities are practically unanimous in holding that where corporations are permitted by law to increase their capital stock mere irregularities will not invalidate the increased issue. The stock is a nullity only where there is absolutely no power to increase. Cook on Corporations (5th Ed.), 288; *Chubb* v. *Upton,* 95 U. S. 665; 26 A. & E. Ency., 852; *Handley* v *Stutz,* 139 U. S., 417; *Veeder* v. *Mudgett,* 95 N. Y., 295. In the case here under consideration, a large part of the increased stock was purchased by the original corporators and dividends were paid on it; the certificates of stock showed the capital of the corporation to be fifty thousand dollars, and for a

period of about ten years, the institution published itself to the world as having a capital of that amount. Certainly, therefore, the stockholders were estopped from denying their liability. It is objected, however, that a two-thirds vote of the stockholders for an increase of stock was not shown, and this being essential to its validity there was no increase. This contention cannot be sustained. In such cases there is always a presumption in favor of regularity. Here the presumption is especially strong. The duty, therefore, devolved upon the stockholders to rebut it. They having failed to do so, we must hold the increase properly voted.

The question next arises as to what is a proper transfer of stock. Section 1894 of the Code of Laws of 1902, Vol. I, provides: "No transfers of stock shall be valid except as between the parties thereto until the same shall have been regularly entered upon the books of the corporation." The Farmers and Merchants Bank kept no regular stock ledger, but only a script or stock book which contained certificates of stock and stubs for making entries and transfers, the following being a copy of a blank stub of said stock book.

No. ...............................................
.............................................. shares
Issued to ..........................................
of ...... ...... .... .. .. ...... .. .. .........
Date .. ......... ...............................
Received the above-described certificates
........................ ... .............
........................................... 189....
Surrendered .............................. 189....
New Certificate No. ..............................
Issued ...... .... .. .. ...... . .... ... 189....

Therefore for a transfer of stock to be regularly entered upon the books of the Farmers and Merchants Bank, the date of surrender, the number of the new certificate, and the date of the reissue must appear, or at least something

to show a proper transfer. There can be no doubt in the present case that no such transfer was made.

The question, therefore, is whether the original stockholders are liable under the statute. This point we think can no longer admit of doubt in this State. In the case of *White* v. *Bank,* 66 S. C., 491, the statute here under consideration was discussed and construed. One of the defendants, E. B. Mobley, in that case set up the same plea that the Carolina Savings Bank and several other defendants set up here, namely, that he had done all a careful and prudent man could do to effect a transfer on the books of the bank. The Court, however, denied this, holding that Mr. Mobley could by process of law have compelled the transfer on the books. This holding seems to be consistent with the overwhelming weight of authority.

Thus in the case of *Young* v. *McKay,* 50 Fed., 394, 395, it is said: "As a general rule, deducible from all of the authorities bearing directly upon the question under consideration, it may be safely stated that, in all cases between the creditors of a bank and the person standing on the books of the bank as a shareholder, the person who allows his name to remain on the books of the bank as a shareholder is estopped from denying that he is a shareholder, and that his individual liability to the creditors continues after he has made a *bona fide* sale of his stock until the transfer of the stock is entered on the books of the bank, and that such transfer cannot be made, as against creditors, after the bank is known to be insolvent." The same principle is recognized in the following cases: *Topeka Mfg. Co.* v. *Hale* (Kan.), 17 Pac., 601; *Shellington* v. *Howland,* 53 N. Y., 371; *Cutting* v. *Damerel,* 23 Hun., 339; *Holyoke Bank* v. *Burnham,* 11 Cush., 183; *Conant et al.* v. *Reed et al.,* 1 Ohio St., 298; *Stewart* v. *Pub. Co.,* 20 Pac., 605; *Weston* v. *Mining Co.,* 63 Am. Dec., 117.

An apparently dissenting view is that of *Whitney* v. *Butler,* 118 U. S., 655, followed by the case of *Young* v. *McKay, supra,* in which it was held that where the transferrer

had delivered the certificates to the bank with the request that the transfer be made on the books of the bank, he had done all that could be expected of him and, therefore, would be relieved from liability.

Both on reason and authority we prefer to follow our own decisions. The statute provides that the transfer shall be "regularly entered" on the books of the corporation. The meaning is so clear that any other construction than that put upon it in the case of *White* v. *Bank, supra,* would seem to be a violation of the plain intention of the law-making power of the State. Certainly it would be going a long way for this Court to conclude that body did not mean what it said and thus relieve transferrers from liability, to the injury, perhaps, of unsuspecting creditors.

The assignor, however, has his remedy. It is well settled that between him and his assignee the transfer is valid, even though not entered upon the corporation books. The contract as to them is complete. Therefore, in order to adjust all the equities of the case, it is necessary to hold that the transferrer has a right to recover from the transferee any amount he is compelled to contribute by reason of his name appearing upon the books of the corporation after the transfer has been made. As was said in the case of *Lord* v. *Hutzler* (Md.), 3 Atl., 891, 892: "The object of sale of the stock must have been to denude himself (the transferrer) of all interest in it, and to transfer it to the purchaser. Henceforth all of the advantages arising from the ownership were to accrue to the purchaser, and all burdens arising therefrom were to be borne by him. It is simply impossible to suppose that, in making the contract of sale, the parties intended that the seller would pay future assessments for the benefit of the purchaser. It would be just as reasonable to infer that he was to receive any future dividends which might be declared. If, then, the seller was compelled by legal proceedings to pay assessments properly chargeable to the ownership of the stock, he paid them for the benefit of the purchaser, and, *ex aequo et bono,* he ought to be reim-

bursed." Other cases to the same effect are *Bailey* v. *Shrover,* 1 Atl., 717; *Johnson* v. *Underhill,* 7 Sickels (N. Y.), 203; *Gordon* v. *Parker,* 5 La., 413; *Kellogg* v. *Stockwell,* 75 Ill., 68. This is likewise the English rule. *Evans* v. *Wood,* 5 Equity Cases, 9; *Tain* v. *Hutchinson,* 3 Chancery Appeal Cases, Law Reports, 1867-68; *Crissell* v. *Bristone,* 3 C. D., 112; *Hawkins* v. *Matby,* 4 Chancery Appeal Cases, 200. Its equity is too apparent to require comment.

It is further contended that the liability of the stockholders is governed by the Constitution of 1895 and, therefore, only the claims of depositors should be paid. This position must be overruled. The Constitution itself provides (Sec. 16, Art. IX) that it shall apply only to charters or grants of corporate franchise, under which organizations have not in good faith taken place at the adoption of this Constitution. In other words, the Constitution was not to be retroactive. It was not intended to affect in any way charters previously granted in good faith. In the case of *Laura Glenn Mills* v. *Ruff,* 52 S. C., 448, 30 S. E., 587, the Court held that in order to make charters in existence at the time of the adoption of the Constitution of 1895 subject to its provisions, it was necessary that there should be legislation to that effect. We think it was not intended that the case of *Mills* v. *Springs,* 56 S. C., 538, 35 S. E., 222, should convey the inference that the Court was of the opinion that the provisions of the Constitution of 1895 did apply to banks chartered prior to that time. On the contrary, the language seems to indicate merely that the difference between the law as to banks prior to and subsequent to the Constitution had not been pointed out. If the Farmers and Merchants Bank had surrendered its charter and obtained one under the new Constitution, or if there had been some legislative act making banks chartered prior to 1895 subject to the constitutional provisions, the contention of the defendants might be sustained. But in the absence of such action we must hold the Constitution of 1895 inapplicable.

The only other question which we will consider has reference to the proper amount of the judgments found against the stockholders. Certain of the defendants contend that the report of the master shows that judgments for the ultimate liability of the stockholders will be much more than sufficient to pay all the creditors of the bank, and that, therefore, the master should be compelled to estimate the amount necessary, which amount should be prorated among the stockholders and judgment entered accordingly. From the very nature of the case such a method would be highly impracticable. The method sanctioned by reason, and we believe sustained by authority, is that suggested by the Circuit Judge, namely, that judgment for the full liability be entered against the stockholders and that such assessments be made from time to time as are found to be necessary. It can be readily seen that no harm to either side can result from this method. The entire winding up of the affairs of the bank is, practically speaking, in the hands of the Court, and it will so exercise its power as to preserve harmless the rights of all parties.

All other questions raised are overruled and the judgment of the Circuit Court thereon is affirmed.

It is the judgment of this Court, that the judgment of the Circuit Court be modified as herein indicated.