13632

FANT, STATE BANK EXAMINER, v. EASLEY LOAN & TRUST CO. *ET AL.*

CENTRAL NATIONAL BANK OF SPARTANBURG *ET AL.* v. LOVE

(169 S. E., 659)

*Messrs. Osborne & Butler, Stephen Nettles, W. H. Earle* and *O. K. Mauldin,* for appellants,

*Messrs. Blythe & Bonham* and *J. D. Wyatt*, for respondent, 

May 9, 1933.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The Easley Loan & Trust Company is a banking corporation, which, during the year 1929, had its place of business at Easley, S. C. November 8, 1929, its affairs were taken over by the State Bank Examiner, and on November 29, 1929, J. L. Love was made receiver thereof and is now engaged in the discharge of the duties of that office.

Smith Bros. was a partnership composed of Lloyd H. Smith and Ralph H. Smith, engaged in the business of buying and selling cotton; their office was across the street from the banking house of Easley Loan & Trust Company.

The officers of the Easley Loan & Trust Company, of which we shall speak as the Easley Bank, were Lloyd H. Smith, president, Ralph H. Smith, vice-president, A. F. Wyatt, cashier, S. F. McDaniel, assistant cashier; Earle Lawrence and James B. Spearman were bookkeepers.

The appellants herein brought this action, in the original case, against the receiver of the Easley Bank and allege that each of them sold cotton to Smith Bros., drew drafts upon Smith Bros. for the amounts of the proceeds of such sales, which drafts were deposited in local banks at the places of business of the sellers, and by such banks forwarded to the Easley Bank for collection, with letters of "credit and remittance" attached. That Smith Bros. abstracted the bills of lading and drafts from the bank, took them to their office,

detached the letters and drafts, and attached to the bills of lading their own drafts on the persons to whom they sold the cotton; these bills of lading with their drafts were deposited in the Easley Bank which was given the check of Smith Bros. on that bank in each instance, and Smith Bros. were given immediate credit for the amounts and were checked out by Smith Bros. in their own business. These checks were not charged to the account of Smith Bros. but were attached to the original letter of credit and placed in the collection file, where they remained till the bank was closed. The proceeds of the drafts when collected were deposited to the credit of the Easley Bank with its correspondent banks in Greenville.

Plaintiffs claim priority over depositors and general creditors of the Easley Bank on the ground that the bank was guilty of fraudulent conduct in the premises from which arises a trust *ex maleficio* in favor of plaintiffs.

The Central National Bank of Spartanburg claims priority on the further ground that the check given by Smith Bros. in lieu of the draft and bill of lading which it had forwarded for collection, could, on two occasions before the bank was closed, have been paid, since on those occasions Smith Bros. had in the Easley Bank funds sufficient to pay it, but the check was never presented.

South Carolina National Bank of Greenville, S. C., and First National Bank of Blakely, Ga., claim priority on the further ground that the Easley Bank sent them checks in payment of their items, which checks were never paid, but which were a legal assignment *pro tanto* of the funds of the bank.

The Easley Bank had a bond of the National Surety Company insuring it against loss through fraud, embezzlement, abstraction, etc., of the bank's employees. Action was brought by the receiver to recover the amount of this bond, which action was compromised and settled for the sum of $17,500.00. The appellants claim priority in the distribution

of this fund on the ground that the recovery was had because of the fraud of the officers and employees of the bank in the matter of the cotton transactions herein involved.

It was referred to H. K. Townes, Esq., to take the testimony and determine all the issues of law and of fact. He filed his report, denying the right of plaintiffs to priority upon any of the grounds upon which their claims thereto were based. Exceptions to this report took the matter to the Circuit Court, where it was heard by Judge Mann, who denied priority "to all classes of creditors named in the report," and confirmed the referee's report thereabout.

The appeal is from that order.

The exceptions are numerous, by the several appellants, but save for the special claim of preference by Central National Bank of Spartanburg, S. C., and that of South Carolina National Bank of Greenville, S. C., and First National Bank of Blakely, Ga., they are practically the same.

We shall not discuss them in detail and by number, but the opinion will dispose of all the questions made by them.

The initial issue turns upon the question whether appellants are entitled to a priority in the distribution of the general assets of the Easley Bank by the application of the principle of a trust arising from the fraudulent acts of the officers and employees of the bank, technically denominated a trust *ex maleficio.*

Counsel for respondents asked, and were given, leave to review the line of cases beginning with that of *Ex parte Bank of Aynor,* 144 S. C., 147, 142 S. E., 239, 242, which promulgated this doctrine. In a strong argument counsel seeks to have the Court overrule this case, and the line of cases following and dependent on it. The contention is that there is no proper distinction in law between a constructive trust and a constructive trust *ex maleficio,* and that South Carolina is practically alone in making a distinction. He cites from 26 R. C. L., 1356 the following: "The generally

accepted rule at the present time is that it must appear that the trust property or its proceeds, have found their way directly into the estate of the trustee; that the property must be found to reside in the assets at the time the claim is asserted, and must not have been expended or dissipated for any purpose in the business of the trustee. If it appears that the trust moneys are dissipated or lost there is no fund to impress with the trust, and the sole remedy of the beneficiary is to proceed against the trustee personally."

This Court adheres to the opinion in the *Aynor case,* and those which follow and rely on it.

It therefore becomes necessary to determine whether the facts in this case bring it within the views declared in the cases above referred to.

There seems to be some confusion of understanding of the holdings of this Court in these several cases. Let us briefly review them.

In the *Bank of Aynor case* it appears that that bank held certain notes of the County of Horry, which it sent to the American Bank & Trust Company at Columbia for sale and remittance of the proceeds. The notes were sold but the proceeds were not remitted; they were converted by the American Bank & Trust Company to its own use. The day before this bank closed its doors it laid aside certain securities and notified the Bank of Aynor that they were assigned to it in payment for the proceeds the notes.

Mr. Justice Cothran, delivering the opinion of the Court, said: "But, even if the assignment of the securities cannot be sustained, the Bank of Aynor would be entitled to priority in the distribution of the assets of the bank, for the reason that, under the circumstances detailed, the funds to which it was entitled became, in the hands of the American Bank & Trust Company, a trust fund, *which were appropriated by the officers of the American Bank & Trust Company to the uses of the bank,* under circumstances which, in the absence of protection to the Bank of Aynor, constituted a

breach .of trust with fraudulent intent, practically a theft, *which inured to the benefit of the American Bank & Trust Company."* (Italics added.)

This conduct resulted in creating what the learned Justice termed a constructive trust *ex maleficio.* The conclusion arrived at by Mr. Justice Cothran was that the Bank of Aynor was entitled to realize upon the pledged collateral, or to be paid as a preferred creditor out of the assets of the bank. In this view Mr. Justice Stabler concurred. Mr. Justice Carter dissented from the conclusion that the bank was entitled to a preference out of the general assets of the American Bank & Trust Company, in which opinion Chief Justice Watts concurred. Mr. Justice Blease was disqualified. The Court was composed of four Justices who divided evenly upon the question of priority of payment from the general assets.

It would seem, then, scarcely proper to hold that case is authority for such doctrine.

There followed the case of *Ex parte Hernlen,* 156 S. C., 181, 153 S. E., 133, 140, 69 A. L. R., 443. The opinion in this case was also written by Mr. Justice Cothran. It said:

"When Vandiver induced Mrs. Hernlen to allow her deposit *to remain in the bank* upon his promise to invest it in a real estate mortgage, it amounted to the same thing as if he had induced her to make a deposit upon such an engagement; under either condition the deposit would constitute the *corpus* of a trust fund and the bank a trustee of it for Mrs. Hernlen. * * *

"It is an established principle, under the case of *Ex parte Bank of Aynor,* 144 S. C., 147, 142 S. E., 239, that the beneficiary of such a trust as this is entitled to be preferred in the distribution of the assets of a failed bank, over the general creditors."

In the case of *Hampton County v. Lightsey,* 164 S. C., 63, 161 S. E., 879, it appears that the treasurer of Hampton County delivered to the Bank of Hampton $35,000.00

with which to pay two notes—one for $10,000.00 and one for $25,000.00, which were held against the county by a bank in New York. The Bank of Hampton was instructed that the notes must be paid by June 30th. The Bank of Hampton forwarded a check for $10,000.00 to pay the note of that denomination, but retained the $25,000.00 in the coffers of the bank for the use of the bank. The bank closed its doors. The county claimed a preference in the distribution of the general assets of the bank upon the authority of the *Bank of Aynor* and the *Hernlen cases,* which preference was allowed by the Circuit Judge which decree was sustained by this Court.

In the case of *Bradley v. Guess,* 165 S. C., 161, 163 S. E., 466, it appears that Guess had in his deposit box in the Bank of Denmark Liberty bonds of the par value of $56,-000.00. The cashier of the bank, without the knowledge of Guess, hypothecated these bonds with other banks as security for notes given for money borrowed for the use of the bank. The bonds were sold to pay the notes. When Guess discovered that his bonds had been abstracted and used by the bank for its own purposes, he was given, and accepted, other securities for the payment of the amount of the bonds. The Court held that for the reason that he had accepted such securities, he had waived his right to preference of payment out of the general assets of the bank; otherwise he would have been entitled to it on the principle of a trust *ex maleficio* created in his favor by the conduct of the bank in appropriating his bonds to its uses. It appears that the bonds when sold realized $9,512.15 more than the notes for the payment of which they were pledged, for which amount the Court held Guess was entitled to preference.

It will be observed that throughout these cases the prevailing principle upon which preference was allowed is that in each instance the bank was the beneficiary of the funds of the claimant which had been fraudulently converted to its use by the bank.

The crucial question in the case here under review is, Did the Easley Loan & Trust Company reap the benefit of the tortious acts of Smith Bros., or were Smith Bros. the sole beneficiaries of their method of handling these cotton transactions? It needs but to recall these methods as they are detailed in the evidence, to conclude that the Easley Bank was not the beneficiary. It is true that when the receipts came in for the cotton thus sold by Smith Bros., they were placed to the credit of the Easley Bank with its correspondent banks. *But,* Smith Bros. had been given credit on the books of the Easley Bank for the like amounts, which they had checked out for their own uses. All that the Easley Loan & Trust Company got was worthless checks. These alone came into the hands of the receiver as proceeds of these cotton transactions.

This cardinal, outstanding fact takes these cases out of the range of the opinions in the *Bank of Aynor case* and the cases which follow its lead.

The Central Bank of Spartanburg maintains that it is entitled to preference for the reason that after its bill of lading and draft had been purloined and the check of Smith Bros. had been substituted for them, on two occasions Smith Bros. had a balance to their credit more than sufficient to pay this check, if it had been presented. The evidence in support of this claim is wholly unsatisfactory. There is evidence that at least one other of these checks was in the bank at the times when it is claimed by Central Bank its check could and should have been paid. It is not shown that there were not other checks of Smith Bros. in the bank of earlier date than that of the Central National Bank.

This claim for priority is without merit.

Nor is there merit in the claims of South Carolina National Bank of Greenville and First National Bank of Blakely that they were entitled to preference because cashier's checks of the Easley Bank were sent them which were not honored by the drawees, because of the clos-

ing of the Easley Bank, which checks operated as assignments *pro tanto* of the funds of the Easley Bank in the drawee banks.

This contention is refuted by the decisions of this Court in *Pinewood Bank v. Bradley,* 136 S. C., 511, 134 S. E., 510; *Loan & Savings Bank v. Peurifoy,* 141 S. C., 318, 139 S. E., 783. Since the adoption by this State of the Negotiable Instruments Law, a check is not an assignment *pro tanto* of the funds of the drawer. Section 6940, Code 1932. These transactions antedated the Act of 1930 (36 St. at Large, p. 1368), which has no retroactive effect.

All of the appellants claim priority in the distribution of the fund of $17,500.00 derived from the settlement of the action brought upon the bond given to the Easley Bank by National Surety Company to indemnify the bank against fraud, embezzlement, abstraction, etc., of its employees. The bond was for the benefit of depositors, general creditors, and all others having business of such nature with the bank. No reason is assigned why claimants should have priority except that it was on proof of the wrongful acts in connection with their cotton transactions that the action was settled and the money collected. Other wrongful and criminal acts are charged in the complaint against the employees which must of a surety have entered into the compromise.

This claim of priority cannot be sustained.

We have not discussed the question whether the Easley Loan & Trust Company was chargeable with the knowledge and acts of its officers and agents acquired and committed in connection with appellant's property for the reason that the view which we have taken of the case renders it unnecessary. However, we may say that in our judgment they were so chargeable. The case of *Citizens' Bank v. Heyward,* 135 S. C., 190, 133 S. E., 709, is authoritative.

The appellants have suffered grievous wrongs and losses at the hands of Smith Bros., who used the Bank of Easley as their instrument. But that bank derived no benefit from

their transactions. Therefore it would be inequitable to say that appellants shall have a preference over the depositors and general creditors of the bank, whose funds constitute in large part the assets of the bank which have come to the hands of the receiver.

"No rule of equity appeals more to the judicial conscience than that which requires the assets of an insolvent corporation to be distributed ratably among creditors." *Livingstain v. Banking Company,* 77 S. C., 310, 57 S. E., 182, 184, 22 L. R. A. (N. S.), 442, 122 Am. St. Rep., 568.

The decree of the Circuit Judge is affirmed, except as modified in the opinion of Mr. Acting Associate Justice Featherstone, in which the majority of the Court concurs.

MR. CHIEF JUSTICE BLEASE and MR. JUSTICE STABLER concur in part.

MR. CHIEF JUSTICE BLEASE and MR. JUSTICE STABLER and MR. C. C. FEATHERSTONE, CIRCUIT JUDGE, dissent in part.

MR. C. C. FEATHERSTONE, CIRCUIT JUDGE (concurring and dissenting) : Being unable to agree with the conclusion proposed in this case by Mr. Justice Bonham in his opinion, I shall state the reasons for my views. In so doing I shall refer to the Easley Bank & Trust Company, as he has done, as the Easley Bank, and I shall refer to the appellants as the "shippers" and to the persons who finally received the cotton as the "buyers."

In the case of *Ex parte Bank of Aynor,* 144 S. C. at page 159, 142 S. E., 239, 243, Mr. Justice Cothran states the principle contended for by the appellants in this case as follows : "But the case is quite different from a constructive trust *ex maleficio*. There the trustee has acquired no more title to the misappropriated fund, than a thief would have acquired. As a matter of law and morals he occupies that detestable position; and the beneficiary occupies a much more favorable position than that of the general creditors, or the beneficiary of a simple constructive trust. If it can be shown,

therefore, that the misappropriated fund went into the coffers of the corporation prior to receivership, was disbursed by the corporation in the payment of its debts or in the acquisition of property, there can be no reason or justice in allowing the general creditors to receive the benefit of the stolen property simply for the reason that a corresponding amount of money was not turned over to the receiver. The corporation will have received the benefit of the stolen fund by the reduction *pro tanto* of its liabilities; the general creditors should not be heard to say that they may hold onto the benefit of the theft and not account for it."

The decision of this case must depend upon the proper application to the facts of this case of the principle thus stated and declared by Mr. Justice Bonham to be the law of this case.

The facts of the case, except as to immaterial matters, are undisputed. It appears from the evidence that each of the appellants had contracted to sell to Smith Bros. certain cotton to be delivered in each case at an appointed destination named by Smith Bros. The cotton was to be paid for in cash before delivery. Under the custom of dealing between the sellers and Smith Bros., each shipper turned his cotton over to a carrier for delivery, receiving a bill of lading for the same, and attached such bill of lading to a draft drawn on Smith Bros. for the correct amount of the purchase price of the cotton, which draft, with the bill of lading attached, was sent to the Easley Bank for collection.

Smith Bros. could not procure the cotton from the carrier without the bill of lading, nor could that firm legally procure the bill of lading without paying the draft to which the bill of lading was attached. The bill of lading, in the hands of the Easley Bank, was the property of the shipper, and represented his or its title to the cotton contracted to be sold. Instead of collecting the draft in each case, before delivering the bill of lading, as was its duty, the Easley Bank allowed one or the other of the Smiths, members of the

partnership of Smith Bros., who were also officers of the bank, and who had access to the papers of the bank, only through such officers, to purloin the bill of lading, and attach such bill of lading to a draft on a person to whom they, Smith Bros., had contracted to sell the cotton. The bill of lading, the property of the shipper, as already stated, with the draft of Smith Bros., to which the bill of lading was attached, was redelivered to the Easley Bank. That bank, through its other offices, either under instruction of one or the other of the Smiths, or in accordance with a course of dealing established by the bank with the Smith Bros., of which the appellants had no knowledge, then proceeded to forward the Smith draft with the shipper's bill of lading attached, to its correspondent bank in Greenville, collected from the buyer of the cotton the amount agreed to be paid to Smith Bros. therefor, and through its collecting agent, delivered to the buyer the bill of lading of the shipper. The cotton went into the hands of an innocent party, but the proceeds of the sale, under the instructions of the Easley Bank, were deposited with its correspondent bank to its own credit and such proceeds of sale were checked out by the officers and agents of the Easley Bank, presumably in paying its debts or in acquiring other assets.

I reach this conclusion because there is nothing in the evidence to show that the money procured from the buyers of the cotton was used for any purpose other than a legitimate purpose of the Easley Bank. The officers and agents of the bank, other than the Smiths, participated in and had full knowledge of all acts by which the bill of lading of the shipper representing his or its cotton, which had not been paid for by Smith Bros., was turned over to the buyer from Smith Bros. Charged with the duty of holding the bill of lading of the shipper, representing the cotton contracted to be sold, until it had collected the shipper's money which the bank was to remit, the officers of the Easley Bank sold the shipper's cotton and appropriated the proceeds thereof to

the use of the bank. The Smiths, no more than the other officers and agents of the Bank of Easley, are chargeable with this breach of trust. For the officers and agents of the bank other than the Smiths to say that they took the property of the shipper and sold it and appropriated the proceeds for the use of the Bank of Easley because they were told to do so by one of the Smiths will hardly be considered by the Court as an excuse for the fraudulent breach of trust.

Nor, as I view the evidence, did the Smith Bros. reap the benefits of the illegal and fraudulent delivery of the bill of lading to the buyer who paid for the cotton. The money for the bill of lading, or for the cotton which the bill of lading represented, and that is what the Easley Bank was authorized to receive for remittance only, went to the credit of that bank in a Greenville bank and not to the credit of the Smith Bros. Not a dollar of the money was received by the Smith Bros. or was it ever transferred from the Greenville Bank to the Smith Bros.

It cannot be claimed that Smith Bros. obtained the benefit of the illegal and fraudulent transaction because of the fact that the partnership received credit with the Easley Bank for the draft drawn on the buyer of the cotton. It is clear from the evidence in this case that Smith Bros. would have received credit at the hands of the other officers of the bank and at the hands of the bank for any draft which they drew, as readily without a bill of lading as with it, their will dictating the decisions of the bank and of its officers upon all questions. The other officers and agents of the bank who had no interest in the transaction and who were bound under the law to protect the interests of the bank and its customers, as indicated, appear to have been entirely subservient to the Smiths, and in all matters were ready to do their bidding. As stated, therefore, and as shown by the evidence, credit was not extended to Smith Bros. on account of the bill of lading of the shipper, which was attached to their draft but because one or the other of the Smiths required such credit.

In addition to this, as a part of the transaction by which credit was given for the draft of the Smith Bros. in each case that firm delivered to the Easley Bank a check on their own account in that bank in the amount of the value of the cotton as represented by the draft of the shipper.

In the transaction by which Smith Bros. took possession of the bill of lading in each case, and I am now speaking of the transaction as between Smith Bros., and the Easley Bank, themselves, and without reference to the rights of the appellants, Smith Bros. could not and cannot now, as against the receiver, claim credit for the deposit represented by the draft which they made upon the buyer of the cotton, without being charged with the amount of the check left with the bank and payable to it, corresponding to the amount which should have been remitted to the shipper. If these checks cannot be paid, the credit given Smith Bros. on account of the draft in each case must be canceled in any proper and equitable settlement of the accounts between Smith Bros. and the receiver. Smith Bros., as between themselves and the receiver of the bank, cannot claim and receive the benefit of an agreement or arrangement between that firm and the bank without performing the obligations assumed by them in order to secure such benefit. In any event, all the benefit that Smith Bros. ever received or could receive in a proper adjustment of their account with the receivers is the amount of the profits contemplated by them in a resale of the cotton and no claim is made here by the appellants for such profits.

The transaction by which Smith Bros., or one of them, purloined the bill of lading from the Easley Bank and re-delivered the same to such bank attached to their own draft drawn on persons to whom they had contracted to sell the cotton, and the transaction by which the Easley Bank collected from the buyers of the cotton the proceeds of sale therefor and appropriated the same to its own use, were acts of the officers of and agents of the Easley Bank in violation of the trust imposed upon them by law. Of such vio-

lation of, and any intended violation of such trust, the appellants had no knowledge, took no part therein, and had no notice of facts from which knowledge might reasonably have been inferred.

The shipper in each case had every reason to believe that the officers and agents of the Bank of Easley would handle his or its transaction in accordance with law and he or it had no notice of facts which would cause even a suspicion of wrong doing.

If the facts in this case, leaving out the transactions of the Smiths, in taking out the bill of lading of the shipper, and the acts of the other officers and agents of the bank in allowing this to be done, warrant the Court in declaring that the shipper is entitled to the benefit of the principle arising out of a trust *ex maleficio,* then, should and will the Court deny the shipper his or its rights as established by the cases cited in the leading opinion because the Smiths, or one of them, as an officer of the bank gave or caused to be given to Smith Bros. credit with the bank for some amount to which they were not entitled to credit or because the other officers and agents of the bank allowed them credit for an amount to which they were not entitled to credit, that is, if credit may be held to have been extended Smith Bros. on account of the bill of lading of the shipper being attached to their draft?

Will the fraudulent acts of the Smiths and of the other officers of the Easley Bank in so doing have the effect of denying to the shipper who trusted the bank and its officers to perform their plain duty and who had no knowledge of the wrong doing of such officers and agents of the Easley Bank, and who had no reason to suspect that such wrong doing would take place, those rights to which the law says the shipper is otherwise entitled? To ask these questions is to answer them.

The evidence makes it clear that the Easley Bank, through its proper officers and agents, received the shipper's property, his bill of lading, representing his cotton, for a single pur-

pose—to collect therefor in cash, deliver the bill of lading and remit the proceeds. Instead of doing so, the Smiths and the officers of the bank other than the Smiths, sold the shipper's property in a way not contemplated by law, and the arrangement between the shipper and Smith Bros., collected the proceeds from the illegal and fraudulent sale and used such proceeds for the purposes of the Easley Bank. As stated, the bill of lading of the shipper went into the hands of an innocent purchaser. The cotton of the shipper is gone. Under such circumstances, and under the law as declared in this state, the shipper became entitled to the benefits arising from the stated principle applicable to a trust *ex maleficio*. It is unreasonable and illogical as I view the evidence and the law to claim the shipper's rights which thus became established were divested and wiped out by the proof of other fraudulent designs and acts on the parts of those who in the first instance betrayed their trust. To allow the rights of the shipper to be thus effected would be to destroy the practical application of the principle fixed in the *Ex parte Bank of Aynor case,* and in the cases which have reaffirmed the doctrine announced by Mr. Justice Cothran in the case first mentioned, and would make of the principle a mere theory. It follows, therefore, in my view, that the referee and the Circuit Judge were in error in denying to the appellants priority over the general credits and depositors of the Easley Bank in the distribution of the assets of the bank.

I concur in the conclusions of Mr. Justice Bonham in his disposition of the other claims to priority made by the appellants, however.

My conclusion is that the judgment of the Court below should be reversed in the particulars indicated herein and affirmed in all other respects. A majority of the Court agreeing with these views, it is so ordered.

MR. CHIEF JUSTICE BLEASE and MR. JUSTICE STABLER concur.

Mr. Justice Bonham concurs in part and dissents in part.

### Order on Petition for Rehearing

In the petition for rehearing, the respondent takes two positions.

The first is that this proceeding and all issues therein are wholly legal, and not equitable; and, accordingly, it follows that the findings of fact of the special referee, confirmed by the Circuit Judge, are final, and, therefore, this Court has no jurisdiction to review them. The supporting authorities are *Metz v. Critcher,* 83 S. C., 396, 65 S. E., 394, *Willard v. Finch,* 123 S. C., 56, 116 S. E., 96, and *Raines v. Sanders,* 134 S. C., 284, 132 S. E., 581.

Each of the cited cases had reference to a proceeding to establish and foreclose a mechanic's lien, which the Court said was purely a statutory proceeding, and was not one in equity. We do not regard those decisions as applicable here.

The principles by which this case is governed are stated in the recent case of *Bain v. Rogers,* 158 S. C., 417, 155 S. E., 619, 620, as follows: "Ordinarily, the ascertainment and application of the assets of a bank to the payment of its obligations and the determination of the stockholders' liability, when the subject of judicial inquiry, are matters of equity jurisdiction (*Parker v. Bank,* 53 S. C., 588, 31 S. E., 673, 69 Am. St. Rep., 888; *Man v. Boykin, supra* [79 S. C., 1, 60 S. E., 17, 128 Am. St. Rep., 830]; *Buist v. Williams,* 81 S. C., 495, 62 S. E., 859; *Wilkes & Co. v. Arthur,* 85 S. C., 299, 67 S. E., 297), and in such cases the rule is now well settled that this Court will not disturb the findings of fact by the Master concurred in by the Circuit Judge, unless such conclusions are against the clear preponderance of the evidence or without any supporting evidence (*Kaminski Hardware Co. v. Bag Co.,* 150 S. C., 244, 147 S. E., 874), and it is incumbent on the appellant to convince the Court that the Circuit Judge was in error in the conclusions reached by

him on the facts (*Rivers v. Woodside Bank,* 150 S. C., 45, 147 S. E., 661)."

We find nothing in this case to take it out of the general rule above stated.

Appellants claimed that assets of the bank were impressed with a trust in their favor. This claim the respondent denied. The question of whether or not property is impressed with a trust is always one to be considered and acted upon in equity. "Trusts" are peculiarly within equitable jurisdiction.

The second position is that even if the action is one in equity, the appellant failed to show by the clear preponderance of the evidence that the bank purloined the bills of lading, or that it received the benefit of the misappropriated funds.

A further review of the evidence in the case has not caused us to change the views formerly expressed.

It is, therefore, ordered that the petition be dismissed, and that the stay of remittitur heretofore granted be revoked.

> EUGENE S. BLEASE, C. J.,
> JOHN G. STABLER, A. J.,
> C. C. FEATHERSTONE, Circuit Judge.

MR. JUSTICE BONHAM: I must dissent from the order which dismisses the petition for rehearing in this case. If it be conceded that this is a cause in equity—which is a doubtful proposition—the order correctly states the rule in such cases to be well settled that this Court will not disturb the findings of the Master concurred in by the Circuit Judge, unless such conclusions are against the clear preponderance of the evidence or without any supporting evidence; citing the case of *Kaminski Hdw. Co. v. Bag Co.,* 150 S. C., 244, 147 S. E., 874. To this case there might be added numerous others from this Court. Nor is there any dissent from the addendum to that rule to the effect that it is incumbent upon the appellant to convince this Court that the Circuit Judge was in error in the conclusions reached by him on the facts.

The Master heard and saw the witnesses; he was in by far the best position to analyze, weigh, and apply the evasive, shifting, and often contradictory testimony of the employees of the Easley Bank, upon which the order dismissing the petition for rehearing relies in reaching the conclusion' that the appellants have sustained the burden of showing *by the clear preponderance of the evidence* that the concurrent findings· of fact by the Master and the Circuit Judge are erroneous.

The vital issue made by the petition for rehearing is that the Court has ignored this matter in both the leading and dissenting opinions—and this is true, is undenied. I submit that petitioner has the right to be heard in analysis and dissection of the evidence, which the history of the case would show to be so uncertain as to cause great doubt and long delay and change of position in its determination by this Court.

I am strongly of the opinion that there should be a rehearing.