CASE 70—PETITION EQUITY—SEPTEMBER 27.

# Armstrong, Receiver, v. National Bank of Boyertown.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. BLANK INDORSEMENTS ON A DRAFT IN THE HANDS OF A BANK imply a transfer to the bank of dominion over and some right to the paper, with authority to fill up the blanks as proof of the specific character of that right.   But such implication may be rebutted by evidence showing the true character of the transaction and the actual rights of the parties.

2. TITLE OF BANK TO CHECKS DEPOSITED AND CREDITED AS MONEY.— Upon a deposit made by a customer in a bank, in the ordinary course of business, of money or drafts or checks received and credited as money, the title to the money or to the drafts or checks is immediately vested in and becomes the property of the bank; and if checks, notes, etc., are deposited for collection, credited to the depositor on general account and drawn against, the bank is holder of the paper for value, and if it becomes insolvent the paper forms part of its assets.   And where it is the custom of a depositor to deposit checks payable to himself, which are entered on his pass-book, and to draw against such deposits, an indorsement of the words "for deposit" on a check so deposited is, in the absence of a different understanding, presumption of more than a mere agency or authority to collect; it is a direction by the customer to deposit the sum to his credit.

3. TITLE TO DRAFTS DEPOSITED IN BANK FOR "COLLECTION AND CREDIT."—When a bank receives a draft or note for "collection on account," or, which is the same, "collection and credit," it does not owe the amount until collected; and though credit be given therefor prior to collection, the bank is not precluded from canceling such credit, which is regarded as only provisional, if the paper is dishon-

ored.   On the other hand, the owner of the paper is at liberty to treat
the bank as an agent until the proceeds are collected by the bank in
money, and an entry of credit by the bank before it has actually
received the money will not bind the owner.   Therefore, when the
bank has entered the credit, and then gone into the hands of a re-
ceiver before it has actually received the money from another bank to
which it transmitted the paper for collection, the real owner may
recover from the latter bank the proceeds still in its hands.   Neither
the receiver nor the creditors of the bank which transmitted the
paper for collection have any right to the money.   A mere usage
between banks whereby the collecting bank credits the transmitting
bank with the amount collected, instead of remitting, is not sufficient
to deprive the real owner of his rights.

BARNETT, MILLER & BARNETT FOR APPELLANT.

1. If paper is deposited specifically for collection, it remains the property
of the depositor, but where for credit or indorsed absolutely, the title
passes. (St. Louis and S. F. R'y Co. v. Johnston, Receiver, 27 Fed.
Rep., 243; Balbach v. Frelinghysen, 15 Fed. Rep.; National Bank v.
Loyd, 90 N. Y., 531; Roberts v. Hill, 24 Fed. Rep., 571; Cody v.
National Bank, 55 Mich., 381; Ayres v. The Bank, 79 Mo., 421; Bul-
lene v. Coats, 80 Mo., 426; Flannery v. Coats, 80 Mo., 445; Terhune
v. The Bank, 34 N. J. Eq., 367.)

In this case there was an absolute indorsement under a special con-
tract between the two banks that the claim was to be collected, and,
when collected, credited on reciprocal or mutual accounts.   But the
appellee's contention ignores its special contract and the effect of its
indorsement.

As to distinction between general and special deposits, and as to
the rights of depositors, see Keene v. Collier, 1 Met., 415; Clark v.
The Bank, 2 Comstock, 380; Marine Bank v. Fulton, 2 Wall., 256.

As to the effect of the indorsement, see Swenney v. Easter, 6 Peters,
51; Henderson v. Anderson, 3 How., 73; Blair v. Pollock, Litt. Sel.
Cases, 208; Cope v. Daniel, 9 Dana, 415.

2. A party about to become insolvent and to contract a liability is not
bound to disclose his condition.   If he makes false affirmative repre-
sentation in that respect, that may become a fraud.   (Reddington v.
Roberts, 25 Vt. 686; Patterson v. Campbell, 70 Ill., 72; Smith v.
Smith, 21 Pa. St., 367; Nicholas v. Pinner, 18 N. Y., 295; Bank v.
Loyd, 90 N. Y., 531.)

3. The receiver is not a voluntary assignee, and is not affected by the
frauds of the bank committed to the prejudice of creditors.

4. The United States, through its Treasurer, by his subordinate, the
Comptroller of Currency, is the real party involved.   (White v.
Knox, 111 U. S., 784; Bank v. Kennedy, 17 Wall., 22.)

Armstrong, Receiver, v. National Bank of Boyertown.

D. M. RODMAN FOR APPELLEE.

1. A custom among banks of transmitting bills and notes to each other for collection, and, when paid, of passing the avails to the credit of the bank so transmitting, and to the debit of the bank receiving them, can not affect the claim of a third person to the avails of a bill which had been committed to one of them for collection; and this is true, even where there is an absolute indorsement, unless there is some equity in favor of the collecting bank. (Smith on Banking Laws, p. 375; Morse on Banks and Banking, p. 365; 1 Daniel on Negotiable Instruments, secs. 336-340; 22 American Law Review, p. 897; Hacket v. Reynolds, 114 Pa. St., 328; City Bank of Sherman v. Weiss, 67 Texas, 331; s. c., 2 S. W. Rep., 299; In re Armstrong, 33 Fed. Rep., 408; Circleville Bank v. Monroe Bank, 33 Fed. Rep., 412; Levi v. Bank, 5 Dillon, 104; Lawrence v. Storington Bank, 6 Conn., 521; Bank v. Bank, 76 Ind., 571.)

2. A receiver is no more than an assignee in bankruptcy, who has been held not a purchaser for value. (Bridgeford v. Barbour, 80 Ky., 530; Circleville Bank v. Bank of Monroe, 33 Fed. Rep., 412; Balbach v. Frelinghuysen, 17 Fed. Rep., 683.)

3. The Comptroller is the superior officer, and the receiver is his agent. (Kennedy v. Gibson, 8 Wall., 499; 50 sec. Nat. Banking Act, 13 Stat., p. 99; Price v. Abbott, 17 Fed. Rep., 508; Bank v. Kennedy, 17 Wall., 22; Hitz v. Jenks, 123 U. S., 306; secs. 1001 and 5234, Rev. Stat. U. S.; White v. Knox, 111 U. S., 784.)

And there is no reason why the agent is not bound by the principal's admissions of record as to the title of the principal to the thing in controversy, just as much as a matter of inducement in a bill in chancery would be evidence against the complainant. (Stephens' Dig. Ev., 26; McConnell v. Bondsey, 4 Mon., 395; Rees v. Lawless, 4 Litt., 219; Samuel v. Sage, 5 Dana, 230; L., C. & L. v. Mahan, 8 Bush, 187.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

Appellee, National Bank of Boyertown, Pennsylvania, brought this action to recover of Louisville Banking Company amount of a draft collected; but the latter, disclaiming ownership, paid the money into court, and since then litigation about it has been between appellee and appellant, Armstrong, Receiver of Fidelity National Bank, at Cincinnati, Ohio, who was, upon his petition, made a party to the action.

The draft was made payable at Bank of Louisville to Hellegass, but appellee, by discounting, became owner, and May 25, 1887, sent it to the Fidelity Bank for collection. Thence it was sent for the same purpose to, and June 17, day of maturity, collected by, Louisville Banking Company, of which fact the Fidelity Bank was notified by letter received June 18, and on that day it mailed to appellee the same notification, which was received June 20. But the only account kept by the Fidelity Bank of either the draft or money was on its collection-register, when an entry was made June 20 of credit to appellee for the amount so collected by the Louisville Banking Company.

It further appears that June 20, after close of its business, the Fidelity Bank was, by authority of the Comptroller of Currency of the United States, closed, and placed in possession of Armstrong as Receiver; and subsequently, upon information filed in the United States Circuit Court, judgment was rendered, forfeiting its franchise.

The first inquiry that naturally arises in determining which of the parties has right to the money in dispute is as to the attitude toward each other of appellee and the Fidelity Bank when the draft sent by the former was received by the latter.

The indorsements on the draft when it went into possession of the Fidelity Bank were in blank, which fact, as held by this court, implied a transfer to that bank, as holder, of dominion over and some right to it, with authority to fill up the blanks as proof of the specific character of that right. (Cope v. Daniel, 9 Dana, 415.) But such implication may be rebutted by

evidence showing the true character of the transaction and actual rights of parties. If it could not, then the result in this case would be to exclude altogether the claim of appellant, who has title, as receiver, to only what the defunct bank owned; for the blanks had not been filled up when the draft was received by the Louisville Banking Company, and of course it became entitled to benefit of the same implication.

The evidence is conclusive, independent of appellant's admission, appellee did not intend to transfer, and the Fidelity Bank did not elect by filling up the blanks to receive the draft as *bona fide* holder, even if it could have done so. That the actual relation between the parties was that of principal and agent is not only shown by a letter of instruction accompanying the draft, and the entry mentioned, but the theory of appellant's right to the money is based upon the fact, conceded in his pleading, that the draft was sent by one and received by the other for "collection and credit."

There is, however, as contended by counsel, a distinction between an instruction by the owner to a collecting bank to "collect and remit," and the one given in this case, to "collect and credit." But whatever other difference in meaning of the two phrases there may be, both convey the idea that the party giving is then owner, and the one receiving the instruction is agent.

Such, then, being the relation when the draft was received, the main inquiry is, whether any thing thereafter occurred which had the legal effect to change the attitude of the Fidelity Bank from that of agent to owner.

It appears appellee was induced to send the draft by a circular letter of the Fidelity Bank, containing representations of its solvent and prosperous condition, and proposal to allow to its customers interest on daily balances, and to make no charge for collecting, nor for exchange in transmitting; and it must be taken as true that the draft was sent under an implied contract that when collected the amount might be remitted directly, or entered to appellee's credit, at the option of the Fidelity Bank,

But according to the plain meaning of that agreement, collection of the money by the Fidelity Bank was a condition precedent of its right to enter the credit; and thus comes the question whether the collection made by the Louisville Banking Company, and entry of the amount on its books to the credit of the Fidelity Company was, in meaning of the contract, such collection by the latter as gave it the right by mere entry on its collection register, before receiving the money, to change itself from agent to owner and appellee from owner to creditor.

The general doctrine seems to be "that upon a deposit being made by a customer in a bank, in the ordinary course of business, of money, or drafts or checks *received and credited* as money, the title to the money, or to the drafts or checks, is immediately vested in and becomes the property of the bank." And if checks, notes, etc., are deposited for collection, credited to the depositor on general account, and *drawn against*, the bank is holder of the paper for value, and if it becomes insolvent, it forms part of its assets. (Morse on Banking, sec. 573, and authorities cited.) And the rule is

so extended that when a customer has a deposit account with a bank on which he is accustomed to deposit checks payable to himself, which are entered on his pass-book, and to draw against such deposits, an indorsement of the words "for deposit" on a check so deposited is, in the absence of a different understanding, presumption of more than a mere agency or authority to collect; it is a request and direction to deposit the sum to the credit of customers. (*Ibid*, 578.)

But it is well settled that when a bank receives a draft or note for "collection on account," or, what is the same, "collection and credit," it does not own the amount until collected; and though credit be given therefor prior to collection, the bank is not precluded canceling such credit, which is regarded as merely provisional, if the paper is dishonored. It would, therefore, seem just and reasonable, even if there was no authority to support the position, that if the bank does not, in such case, owe the amount before it is actually collected, it should not be held to have any other right to it than as agent, and that if not bound by an entry of credit it should not have power to bind the real owner thereby. It has, however, been distinctly, and we think correctly, held that a holder of paper who delivers it to a bank for collection and credit is at liberty to treat the bank as an agent until the proceeds are collected by the bank in money, and that authority of the bank to credit the customer does not arise until he has actually received the money. (Levi v. National Bank, 5 Dillon, 104; Marion Bank v. Fulton Bank, 2 Wall., 556; Morse on Banking,

section 568; Daniel on Negotiable Instruments, section 334.)

We, therefore, think collection of the draft by the Louisville Banking Company and entry of the amount to the credit of the Fidelity Bank did not have the effect of investing the latter with ownership nor changing its relation to appellee; for a mere usage between banks, whereby the collecting bank credits the transmitting bank with the amount collected, instead of remitting, is not alone sufficient to be set up against the real owner of notes or bills to deprive him of his rights. (Morse on Banking, 365; First National Bank v. Gregg, 79 Pa. St., 384.)

It thus follows the only party known by this record entitled in any event to the money in contest is the Louisville Banking Company; for we do not see how appellant, as receiver, can legally claim money never even reduced to his possession if the Fidelity Bank, while in existence, could not have done so; nor do we think its creditors have the least interest, as in no sense have they been prejudiced or misled. But it is manifest the Louisville Banking Company was not, when it received the draft, ignorant of the true owner, and, therefore, did not nor could become a *bona fide* holder of the draft. Moreover, its disclaimer here of any interest in or right to the money is equivalent to an admission no advances were made on the paper by it, and no balances existed against the Fidelity Bank. Consequently, the Louisville Banking Company held the money simply in trust for the true owner, and could not have resisted recovery, even if it had made defense.

It is not necessary to consider the question raised as to the effect of the fraudulent conduct of the Fidelity Bank; for the reasons already given are sufficient to make it clear appellee never ceased to be owner of the draft, and consequently is entitled to the money sued for. Authorities differ somewhat as to the remedy of the holder and owner of a bill or note that has passed through a series of banks in course of collection. But no question exists anywhere of his right to maintain an action against the bank having possession of the paper or money collected where the transmitting bank has become a bankrupt, or, as is the case here, has gone out of existence.

Judgment affirmed.