CHARLES W. BRANCH, APPELLEE, V. UNITED STATES NATIONAL BANK OF OMAHA, APPELLANT, ET AL.

FILED FEBRUARY 3, 1897.   No. 6939.

1. **Commercial Paper:** INDORSEMENT: TITLE. The legal title of commercial paper indorsed "for collection" passes to the indorsee only so far as to enable him to demand and enforce payment thereof.

2. ———: ———: ———: BANKS AND BANKING. The owner of paper so indorsed may control the same until paid in full, and may intercept the proceeds thereof in the hands of an intermediate agent.

3. **Banks and Banking:** COLLECTIONS. The mere crediting of the account of the remitting bank by a correspondent employed by it to make collections does not create in favor of the latter such an equity as can be interposed in defense of an action by the owner of the paper so collected for the proceeds thereof.

4. ———: ———: PROCEEDS. Evidence examined, and *held* insufficient to prove that the position of appellant, a sub-agent for the collection of commercial paper, has been altered to its damage through the placing of the proceeds of such paper to the credit of the bank from which it was received.

APPEAL from the district court of Lancaster county. Heard below before STRODE, J. *Affirmed.*

*Cowin & McHugh,* for appellant.

*John S. Bishop,* contra.

POST, C. J.

This was an equitable proceeding in the district court for Lancaster county, whereby the appellee, Charles W. Branch, seeks to recover the sum of $941.34 and interest, being the proceeds of a check drawn to his order by the Hamilton Brown Shoe Company upon the Continental National Bank of St. Louis, under date of January 11, 1893. A final decree was by the district court rendered against the appellant, the United States National Bank of Omaha, in accordance with the prayer of the petition, and dismissing the action as against the defendant Hayden, receiver of the Capital National Bank. The issues presented by the pleading are fairly indicated by the findings of the district court, viz.:

"That on the 13th day of January, 1893, at Lincoln, Nebraska, the plaintiff indorsed said check and delivered it to the defendant, the Capital National Bank of Lincoln, for collection, and that the said Capital National Bank received the same for collection as the agent of the plaintiff, without paying any consideration therefor, and stamped its collection number 15227 on the face of said check, and entered the same on its collection register as the collection of plaintiff; that on the 14th day of January, 1893, the defendant, the Capital National Bank, indorsed said check to the order of M. T. Barlow, cashier of the United States National Bank of Omaha, Nebraska, for collection, and forwarded the same by mail to the said United States National Bank at Omaha, Nebraska, as the property and collection of this plaintiff; that the defendant, the United States National Bank, received said check for collection, without paying any consideration therefor, on the 16th day of January, 1893, and that said United States National Bank had notice, by the collection number of the Capital National Bank thereon and the letter of the said Capital National Bank forwarding the same, that the Capital National Bank was not the owner of the said check, but was agent of the plaintiff for

the collection thereof; that on the 20th day of January, 1893, the defendant, the United States National Bank, collected the full amount of said check, to-wit, the sum of nine hundred forty-one and 34-100ths dollars, and that the said defendant, the United States National Bank, has not paid the amount it received on said check, but still has the same in its possession.

"The court further finds that the defendant, the Capital National Bank, acted as the agent of the plaintiff in making this collection and in forwarding the same to the defendant, the United States National Bank, and that said defendant, the Capital National Bank, never received the proceeds of said check.

"The court further finds that the defendant Kent K. Hayden, as the receiver of the said Capital National Bank, never received the proceeds of said check.

"The court further finds that the plaintiff, before the commencement of this action, demanded from the defendant, the United States National Bank, payment of the amount received by it as the proceeds of said check, and that said demand was refused.

"The court further finds that the plaintiff is not indebted to the defendant, the Capital National Bank, and was not a depositor therein, and that on January 20, 1893, said Capital National Bank was insolvent and that its doors were closed on January 21, 1893, and that on the morning of January 23, 1893, said bank passed into the hands of an United States bank examiner and afterwards into the hands of a receiver."

In addition to the facts as above found it appears that the check in question was by the plaintiff indorsed in blank at the time of its delivery to the Capital National Bank for collection; that said check when received by the United States National Bank bore upon its face the following indorsement: "Report by this No. 15227. Capital National Bank," and was indorsed on its back as follows: "Collect for account of Capital National Bank, Lincoln, Nebraska." Accompanying the check was the following letter:

"LINCOLN, Jan. 14, 1893.

"*U. S. National Bank, Omaha, Neb.*: We enclose for collection and cr' number 15227 St. Louis, Mo.    No Protest $941.34.    Please report by our number.    Do not carry collections past maturity.        R. C. OUTCALT,
                                                "*Cashier.*"

The foregoing was by the correspondent bank acknowledged as follows:

                                "OMAHA, 1-20-93.

"*Cap. Nat. Bank, Lincoln:* Your favor of the — inst. is received, with stated enclosures.    We credit  *  *  * No. 15227, $941.34.    We credit out of town items subject to payment.            M. T. BARLOW,
                                                "*Cashier.*"

The Capital National Bank was on January 20, and for a considerable time previous thereto, insolvent, and at the close of business on January 21 was placed in the hands of a bank examiner by order of the comptroller of currency.    There had been, for several years previous to the transaction here involved, continuous dealings between said banks.    As a matter of convenience, and in accordance with the usage of corresponding banks, the proceeds of commercial paper transmitted by the Capital National Bank for collection were by the United States National credited to the account of the former, and paid on its order or transferred to other banks, as the condition of the account might demand.    The books of the United States National show an overdraft by the Capital National on January 16, when the check in controversy was received from the latter, of $18,230.43.    At the opening of business on January 20 the account of the Capital National was overdrawn to the amount of $2,325.93, and during said day there was paid upon its orders by the United States National the sum of $11,454.02, and on said day it was credited with the sum of $11,800.97, including the proceeds of the check in controversy, leaving an overdraft, as shown by the books of the latter at the close of

business, of $1,978.98, and which at the close of business on the 21st had been reduced to $291.85. The letter of advice above set out under date of January 20 was received by the examiner in charge of the Capital National subsequent to the impounding thereof, and the credit in said letter mentioned does not appear upon the books of said bank in the hands of the receiver.

The first inquiry suggested by the record and arguments is the effect of the indorsement by the Capital National Bank of the check in question. It is true that the indorsement in blank by the plaintiff invested the indorsee, the Capital National Bank, with apparent general ownership of said instrument. The subsequent qualified indorsement by that bank, however, to the United States National Bank raises no presumption of ownership by the latter. Such a form of indorsement is not intended to give currency to commercial paper, but, on the contrary, operates to prevent further circulation, and passes to the indorsee such a title only as will enable him to demand payment and enforce collection of paper thus transferred. And the owner may in such case control the collection of his paper and may intercept the proceeds thereof in the hands of an intermediate agent. (*Dickerson v. Wason*, 47 N. Y., 439; *Freeman's Nat. Bank v. National Tube Works Co.*, 151 Mass., 413; *Boykin v. Bank of Fayetteville*, 24 S. E. Rep. [N. Car.], 357; *Clafflin v. Wilson*, 51 Ia., 15; *Commercial Bank v. Armstrong*, 148 U. S., 50; *Evansville Bank v. German-American Bank*, 155 U. S., 556.)

This conclusion leads to the subject of discussion to which most prominence is given in the arguments of counsel, viz., whether the crediting to the Capital National by the United States National on January 20 of the proceeds of the check in question amounts to a payment thereof which can be successfully interposed as a defense to this action. It is contended by appellant that the decisive question is not that of its title under the restricted indorsement, but whether, in view of the plaintiff's unrestricted indorsement of the check, it was authorized to

treat the Capital National Bank as the owner thereof. It is, in effect, contended that the plaintiff, in forwarding the check for collection through the Capital National Bank, by implication consented to the agencies usually employed for that purpose, and that he should, in view of the custom of banks in making collections, be held to have authorized the mingling of the proceeds of this check with the funds of the collecting bank, and settlement therefor by crediting the account of the bank to which the money should otherwise have been remitted. The soundness of that proposition as a general statement of the rule may, for the purpose of this case, be conceded, although it can, for reasons hereafter stated, have no application to the facts of the case before us. No mere book-keeping between a bank and its sub-agent for the collection of money can change the actual status of the parties, or destroy rights which arise out of the real facts of the transaction. (*Commercial Bank v. Armstrong, supra.*) In no case cited, and in none examined by us, has the mere crediting of the remitting bank by a correspondent employed by it to make collections been held to create in favor of the latter such an equity as can be successfully interposed as a defense to an action by the owner for the proceeds thereof. The transaction must in such case, as all agree, in order to work an estoppel, amount to a payment in good faith to the transmitting bank of money realized upon collections by the means usually employed by banks in effecting exchange.

The statement renders necessary a brief reference to the evidence in the record. We have seen that the United States National Bank received the proceeds of the plaintiff's check on January 20, that it paid out on said day, upon orders of the Capital National Bank, $11,454.02, and credited the account of the latter $10,859.63 in addition to the $941.34 now in controversy. The cashier of the United States National, Mr. Barlow, testifies that the sum of $11,454.02, above mentioned, was advanced by him as such cashier, in reliance upon the cash items, in-

cluding the money in controversy, on that day received from, and on account of, the Capital National. But the condition of the account at the time of the receipt of the plaintiff's money and the amount subsequently paid out on that day upon orders of the Capital National, as compared with the remittances of the latter, do not appear, while the cash items received by the appellant bank on the 21st exceed the amount paid out on that day on the orders of the Capital National by $1,687.13. It cannot, therefore, we think, be said that the position of the appellant has been altered to its damage through the crediting of the Capital National of the money received in payment of plaintiff's check. The defense here relied upon is essentially an equitable one, as to which the burden is upon the appellant, and we are, upon the whole record, satisfied that the finding of the district court is right and that its decree should be

, AFFIRMED.