## Commercial National Bank v. First National Bank.

(Decided April 15, 1914.)

### Appeal from Mason Circuit Court.

1.  Banks—Receipt of Draft or Note for Collection.—When a bank receives a draft or note for collection, it does not owe the amount until collected.

2. Banks—Collection of Bill of Exchange.—Where the customer of a forwarding bank drew a bill of exchange, payable to the order of that bank, and the bank forwarded it for collection with a bill of lading attached, and the collecting bank surrendered the bill of lading to the drawee of the bill upon the direction of the drawer, and the drawee subsequently paid his debt directly to the drawer, the collecting bank is not liable to the forwarding bank in a suit by it upon the bill of exchange.

3. Banks—Collection of Bill of Exchange—Customer Presumed To Know Methods of Collection.—When a customer deposits a bill of exchange with a bank for collection at a point distant from the location of the bank, the customer is presumed to know that the bank must select some other bank or agency to aid in making the collection. The customer is presumed to know the method employed by banks in making such collections, and makes the collecting bank his agent for that purpose.

4. Banks—Care Required in Selecting Collecting Bank.—In such a case the forwarding bank is only required to exercise due care and diligence in selecting the collecting bank or agency.

CHAS. L. DALY for appellant.

WORTHINGTON, COCHRAN & BROWNING for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

Early in 1912, the Columbus Engineering & Equipment Company, of Columbus, Ohio (hereinafter called the Equipment Company for brevity), sold two large boilers, with their equipment, to the Ohio Valley Pulley Works (hereinafter called the Pulley Works), of Maysville, Kentucky, for $900.00. Of this amount $200.00 was paid by the Pulley Works on April 22, 1912, it being agreed between the parties that the remaining $700.00 should be paid after the boilers had been delivered and installed.

The boilers were shipped on April 30th; and on May 2nd the Equipment Company, by G. W. Shartle, its President, drew its bill of exchange upon the Pulley Works for $900.00, and payable to the order of the Commercial National Bank, of Columbus, on the arrival of the goods. The bill of lading covering the shipment was attached to the draft. At that time the Equipment Company owed L. R. Smith the sum of $656.50, evidenced by a note for that amount and dated March 20, 1912. When Shartle drew the draft on May 2, 1912, on the Pulley Works, he, in company with Smith, took the draft, with the bill of lading, to the appellant, the Commercial National Bank, of Columbus, and left the draft with said bank for collec-

tion. At that time Shartle stated to the cashier of appellant that the proceeds of the draft, as soon as they were collected, were to be paid to Smith in satisfaction of the note for $656.50 which he held against the Equipment Company, as above stated. The appellant forwarded the draft and bill of lading to the appellee, the First National Bank, of Maysville, for collection. They were received by appellee on May 4th, and it immediately notified the Pulley Works that it held the draft for collection. The Pulley Works refused to accept or pay the draft, because it owed only $700.00, while the draft was for $900.00; and, furthermore, there being a shortage in the shipment, the Pulley Works declined to recognize the draft until the contract had been fully complied with. The Equipment Company was promptly notified by the Pulley Works of its refusal to pay the draft, and its reason therefor; whereupon the Equipment Company wrote the appellee bank, at Maysville, to reduce the draft to $700.00. The Pulley Works, however, still refusing to pay the draft on account of the shortage in the shipment, the Equipment Company telegraphed the appellee bank, on May 7th, to deliver the bill of lading to the Pulley Works, and to hold the draft until the arrival of an explanatory letter.

Acting upon this instruction, the appellee delivered the bill of lading to the Pulley Works, and it received the goods called for by the bill of lading; and upon the shortage having been subsequently supplied by the Equipment Company to the satisfaction of the Pulley Works, the latter paid the remaining $700.00 due upon the purchase price, directly to the Equipment Company.

On May 27th, the appellee returned the original draft to the appellant, uncollected, and on October 24, 1912, the appellant sued the appellee to recover the $900.00 called for by the original bill of exchange.

At the close of all the evidence, the circuit court peremptorily instructed the jury to find for the defendant, and the plaintiff appealed.

There is no controversy as to the facts; the debate relates to the law of the case only.

The appellant does not contend that it bought the draft or that it owns it; on the contrary, it stands uncontradicted that appellant received the draft for collection, only.

Appellee concedes its negligence in releasing the bill of lading without having first secured the consent of the forwarding bank, and its liability for any damage sus-

tained by appellant by reason of the release.   It insists, however, that as appellant was only the gratuitous collecting agent of the Equipment Company which received the money direct from the Pulley Works, appellant has not been damaged.   Clearly, appellant is not liable to the Equipment Company, the owner of the draft.

In Armstrong v. National Bank of Boyertown, 90 Ky., 437, 9 L. R. A., 553, the rule upon this subject was stated as follows:

"It is well settled that when a bank receives a draft or note for 'collection on account,' or, what is the same, 'collection and credit' it does not owe the amount until collected; and though credit be given therefor prior to collection, the bank is not precluded from canceling such credit, which is regarded as merely provisional, if the paper is dishonored.   It would, therefore, seem just and reasonable, even if there was no authority to support the position, that if the bank does not, in such case, owe the amount before it is actually collected, it should not be held to have any other right to it than as agent, and that if not bound by an entry of credit it should not have power to bind the real owner thereby.   It has, however, been distinctly, and we think correctly, held that a holder of paper who delivers it to a bank for collection and credit is at liberty to treat the bank as an agent until the proceeds are collected by the bank in money, and that authority of the bank to credit the customer does not arise until he has actually received the money. (Levi v. National Bank, 5 Dillon, 104; Marion Bank v. Fulton Bank, 2 Wall., 556; Morse on Banking, Section 568; Daniel on Negotiable Instruments, Section 334.)"

This action being upon the draft, we might well stop here with an affirmance of the judgment of the circuit court.

But, in answer to the suggestion that appellant might be liable to Smith for appellee's negligence in surrendering the bill of lading, it is sufficient to say that Smith's claim could, at most, be only an equitable assignment of the proceeds of which appellee had no notice.

Furthermore, under the rule which makes the collecting bank the sub-agent of the owner of the draft, appellant could not be held liable for appellee's negligence; it would be liable only for its own negligence.

In the Farmers Bank & Trust Co. v. Newland, 97 Ky., 470, it is said:

"When a customer deposits with a bank a note, a bill of exchange, certificate of deposit, check, etc., for collection at a point distant from the location of the bank, he must know the bank can not send one of its officers or agents to such point to make the collection. He is presumed to know the method employed by banks in making such collections. He knows that the bank must select some other bank or agency to aid in accomplishing the undertaking imposed on it. He has made the bank his agent for that purpose. He has employed the bank to do, through its methods of making collection, that which would cost him much time and money to do himself. When he so engages the bank and makes it his agent to make the collection, he does so with the implied understanding that the bank will follow the customary method in making such collection, which necessitates the selection of agents or correspondents at other points to carry out the undertaking, and the bank can only be held responsible for the exercise of due care and diligence in making such selection."

As appellant was not the owner of the draft and has not been held liable for appellee's negligence, or at all, it has no cause of action. Under any view of the case the ruling of the circuit court was proper.

Judgment affirmed.