## 12288

LOAN & SAVINGS BANK OF CAMDEN v. PEURIFOY *ET AL.*
RICE *ET AL.* v. CITY OF COLUMBIA *ET AL.*

(139 S. E., 783)

BANKS AND BANKING—FORWARDING BANK HELD ENTITLED TO RECOVER AMOUNT OF DRAFT COLLECTED BY THIRD BANK AND REMITTED TO RECEIVING BANK SHORTLY BEFORE IT CLOSED.—A bank received a draft for collection from a bank with whom it maintained reciprocal accounts, under an agreement that it was to act as agent only in making collections and to remain agent until actual final payment of item handled by it. This draft is forwarded to a correspondent with which it also maintained reciprocal accounts, and shortly thereafter received notice from such bank that the draft had been paid and its account credited accordingly. On the same day and after business hours it notified the bank which had forwarded the draft that collection had been made and its account credited. Later in the same day its officers surrendered control of the bank to the bank examiner and it never reopened. The collecting bank later paid cash including the collection to receiver. *Held,* bank forwarding draft was entitled to recover the amount thereof from receiver, either on the theory that the relation of principal and agent still existed, or on the theory that the crediting of the forwarding bank's account in the manner stated was a fraud on it, rendering the insolvent bank a trustee *ex maleficio.*

Before DENNIS, J., Richland, November, 1926. Reversed.

*Ex parte* petition by the Loan & Savings Bank of Camden, S. C., in an action by John I. Rice and others against the City of Columbia and others, wherein petitioner sought to recover the proceeds of a draft from James E. Peurifoy, receiver of the American Bank & Trust Company, and the Merchants' & Planters' Bank of Hartsville. From a judgment denying the petitioner the relief sought, it appeals. Reversed, and cause remanded.

*Messrs. Kirkland & Kirkland and Mendel L. Smith,* for appellant, cite: *Cases distinguished:* 136 S. C., 511. *Trust arising from fraud and agency:* 137 L. Ed., 363; 20 A. L. R., 1206; 9 L. R. A., 553; 2 C. J., 692; 3 R. C. L., 636; 2

NOTE: As to right of principal to proceeds of collection received after collecting bank becomes insolvent, see annotation in 38 L. R. A. (N. S.), 146; L. R. A. 1917F, 603; 3 R. C. L., 635; 1 R. C. L. Supp., 868.

Mech. B. & Bkg., 1439; 7 C. J., 625, 626. *Cases distinguished:* 81 S. C., 250; 50 S. C., 271; 136 S. C., 511.

*D. W. Robinson and D. W. Robinson, Jr.,* for respondent, cite: *Burden on appellant to prove money accepted with knowledge of insolvency of bank:* 81 S. C., 250; 50 S. C., 271, 284; 19 S. E., 282, 283. *Relation of banks that of debtor and creditor:* 136 S. C., 516; 24 A. L. R., 1150; 15 Fed. (2nd), 176; 12 Fed. (2nd), 893; 15 Fed. (2nd), 586.

October 14, 1927.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

For the sake of brevity, in our discussion of the questions raised by this appeal, we shall refer to the American Bank & Trust Company of Columbia as the Columbia Bank, to the Loan & Savings Bank of Camden as the Camden Bank, and to the Merchants' & Planters' Bank of Hartsville as the Hartsville Bank.

On the afternoon of June 25, 1926, the directors of the Columbia Bank passed a resolution admitting its inability to meet its obligations, and placed its affairs in the hands of the State Bank Examiner for a period of 30 days. Subsequently thereto by order of Court in the case of *Rice et al. v. City of Columbia et al.,* James E. Peurifoy was appointed receiver.

For several months prior to the closing of the Columbia Bank, it and the Camden Bank had maintained reciprocal accounts, transmission of items between the two banks being by mail.

Under the terms of the agreement between the two banks, all items received by the Columbia Bank from the Camden Bank for collection or credit were received subject to the actual receipt of the proceeds thereof by the Columbia Bank; the Columbia Bank was not responsible for losses in the mail and did not guarantee the banks to which the items were sent by it for collection; the Columbia Bank, in the collection of any item, remained the agent of the Camden

Bank until the Columbia Bank received "actual final payment" of the item handled by it for the Camden Bank. The proceeds of items received by the Columbia Bank for collection, as in the case of the draft in question, were not deposited by it to the account of the Camden Bank, nor subject to the checks or drafts of that bank, until, as has been said, the Columbia Bank received actual final payment of the items.

The Columbia Bank and the Hartsville Bank also maintained reciprocal accounts.

On June 21, 1926, one F. M. Wooten, of Camden, drew a draft on J. R. Young & Co., of Hartsville, in favor of the Camden Bank in the sum of $8,849.45. The Camden Bank sent this draft to the Columbia Bank for collection and credit. The Columbia Bank, in turn, in conformity with the arrangements between itself and the Camden Bank, forwarded the draft to the Hartsville Bank for collection. It appears that no acknowledgment of the receipt of this draft was received by the Camden Bank from the Columbia Bank.

The Columbia Bank received notice from the Hartsville Bank, in the regular course of business, on June 25, 1926, that the draft had been collected and the proceeds placed to the credit of the Columbia Bank. Thereafter, between 12 and 1 o'clock of that day, the Columbia Bank advised the Camden Bank by telephone that the draft had been paid, and, before its closing hour, placed the amount thereof to the credit of the Camden Bank. On the morning of June 26, 1926, the Camden Bank received by mail from the Columbia Bank a memorandum of this item, bearing this stamp:

"We credit June 26, 1926. American Bank & Trust Company, Columbia, S. C."

No actual cash or check was ever received by the Columbia Bank from the Hartsville Bank for the proceeds of the draft, payment being made through credit to the account of the Columbia Bank by the Hartsville Bank as above indicated.

Later, after the affairs of the Columbia Bank had been placed in the hands of the receiver, demand was made upon him by the Camden Bank for the full amount of the draft, which demand was refused. This proceeding was then begun by the Camden Bank in order to determine title to the proceeds of the draft.

The matter came on to be heard before his Honor Judge Dennis, in the Court of Common Pleas for Richland County, and on November 17, 1926, Judge Dennis filed his decree denying the contentions of the Camden Bank and holding that the Camden Bank, as to the proceeds of the draft in question, was in the position only of an ordinary creditor and could only share ratably with other creditors of the Columbia Bank in such proceeds.

From this decree the Camden Bank appeals. The question raised by the exceptions is whether, after the Columbia Bank collected the draft through the Hartsville Bank and placed the proceeds of same to the credit of the Camden Bank on June 25, the relation between the Camden Bank and the Columbia Bank was that of principal and agent or *cestui que* trust and trustee, or that of creditor and debtor, which question involves also the question of fraud on the part of the Columbia Bank in crediting the amount collected to the account of the Camden Bank while insolvent and on the eve of its final closing.

It is too well established to need citation of authority that, when the Camden Bank sent the draft to the Columbia Bank for "collection and credit," the relation of principal and agent was created between them. Under the terms of the agreement between the Columbia Bank and the Camden Bank, until the Columbia Bank collected the draft, the sender of the draft, the Camden Bank, was the owner and principal, and the receiver, the Columbia Bank, was the agent. Who, after the collection was made, was the owner of the proceeds of the draft depends upon the intention of the parties,

which, in turn, is to be gathered from their agreement hereinbefore set forth and their custom of doing business.

The appellant contends that "actual final payment," as these words are used in the agreement between the two banks, means the actual receipt *in cash* of the proceeds of the draft by the Columbia Bank.

We do not agree with this contention. As has been pointed out, there was a mutual agreement between the two banks, whereby the Columbia Bank collected items sent to it by the Camden Bank and, after final payment, credited such items to the account of the Camden Bank. When the Columbia Bank elected to have the proceeds of the draft in question credited to its account at the Hartsville Bank, instead of having such proceeds sent to it in cash, and received due notice of such credit, it would not be heard to deny that it had received *actual final payment* of the draft. If the Columbia Bank could, under these circumstances, deny that actual final payment had been made to it, then it might have deferred receipt of *cash* for an indefinite period and during all that time could have denied responsibility to the Camden Bank, although the funds had been deposited to its credit in the Hartsville Bank and it had the use and control of them as a depositor in that bank in the meantime. The Columbia Bank, therefore, when it received notice from the Hartsville Bank that the draft had been collected and the proceeds of same credited to its account at that bank, and charged the amount of the draft against the account of the Hartsville Bank, and credited the amount to the account of the Camden Bank, became liable to the Camden Bank as to any other depositor creditor.

So we are led to conclude that when the various steps had been taken, as indicated above, in the collection of the draft, culminating in the Columbia Bank's giving credit to the Camden Bank for the amount so collected, against which credit the Camden Bank could then issue its checks, the relation of principal and agent, existing up to that time

between the Columbia Bank and the Camden Bank, ceased, and that of creditor and debtor arose, subject, of course, to any intervening cause, such as fraud on the part of the Columbia Bank, from which a trust in such fund might be created in favor of the Camden Bank.

The appellant contends that the Columbia Bank became a trustee *ex maleficio,* by its action in crediting appellant's account with the proceeds of the draft during the closing hours of the Columbia Bank, when the bank was hopelessly insolvent and such fact known to its officers; that such action on the part of the officers of the Columbia Bank constituted such a palpable fraud upon the appellant as entitles it to a preferential claim; and that this fund, paid into the hands of the receiver as a special fund, augmenting the assets of the Columbia Bank, may be identified in the hands of the receiver, and is impressed with a trust in favor of the Camden Bank.

We think that there is merit in this contention of the appellant. The trial Judge found, from which there is no appeal, that the Columbia Bank was insolvent on June 25, 1926, at the time that the proceeds of this draft were credited to the account of the appellant, and had been insolvent for some time prior thereto.

In *Ex parte Berger,* 81 S. C., 244; 62 S. E., 249; 22 L. R. A. (N. S.), 445, this Court quotes with approval the following from *Wasson v. Hawkins* (C. C.), 59 F., 233:

"The keeping of the bank open, and the conducting of its business in the usual manner, constituted a representation to its customers of the solvency of the bank, upon which they had a right to rely; and if the bank was known to be insolvent by the officers who were charged with its management, the concealment of that fact from a person about to make a deposit would constitute a fraud upon him. The title acquired by the bank to the money and checks, deposited under such circumstances, would be voidable at the election of the depositor, who could bring suit to recover his deposit

without any previous demand. The bank would become a trustee *ex maleficio,* and would hold the deposit for the use of the depositor and subject to his right of reclamation."

See, also, *Steele v. Allen,* 240 Mass., 394; 134 N. E., 401; 20 A. L. R., 1203; *St. Louis & S. F. R. Co. v. Johnson,* 133 U. S., 566; 10 S. Ct., 390; 33 L. Ed., 683.

The respondent admits by its answer that the bank was insolvent, but contends that there is no evidence in the case to show that the officers of the bank knew of such insolvency. On this point the Circuit Judge in his decree says:

"I do not think that the cashier of the bank knew of this insolvency, but I believe that the president, Mr. Mauldin, and the chairman of the board, Mr. Matthews, had sufficient information to put them on notice or knowledge of its insolvent condition during the last few weeks prior to June 25, 1926."

This conclusion by him was reached, presumably, upon the facts of the case before him. Furthermore, the Columbia Bank closed its doors at 2 o'clock on June 25, 1926, and thereafter, on the same day, the directors by resolution admitted its inability to meet its obligations and placed its affairs in the hands of the State Bank Examiner, and its doors were never reopened. In the face of these facts, the presumption arises that the officers of the bank knew of its insolvent condition, unless we attribute to them the grossest inattention, neglect, and indifference in the management of its affairs. See *Cragie v. Hadley,* 99 N. Y., 131; 1 N. E., 537; 52 Am. Rep., 9.

We are satisfied from the findings of the Circuit Judge, and from all the facts and circumstances of the case, that the Columbia Bank knowingly practiced a gross fraud upon the Camden Bank. It is evident that the responsible officers of the Columbia Bank knew of its hopelessly insolvent condition at the time that bank credited the account of the Camden Bank with the proceeds of the draft; that they knew before such entry was made that these funds belonged to the Cam-

den Bank; and that the Columbia Bank had no equity in same and had no right to transfer them to the general funds and mix them with the general assets of the bank for the benefit of its general creditors to the exclusion of the Camden Bank, for which they were collected.

We think that the fund in question in the hands of the receiver, by reason of the fraudulent acts of the Columbia Bank referred to, is impressed with a trust in favor of the appellant, and that the appellant is entitled to receive payment of same.

In support of their position, the respondents cite the recent case of *Bank v. Bradley,* reported in 136 S. C., 511; 134 S. E., 510. While we adhere to the principles so well stated by Mr. Justice Cothran in his opinion in that case, that decision does not govern here. The facts of this case completely differentiate it from the *Bradley case.*

The judgment of this Court is that the judgment of the Circuit Court be reversed and the case remanded to that Court for further proceedings not inconsistent with the views herein expressed.

MR. CHIEF JUSTICE WATTS concurs.

MESSRS. JUSTICES COTHRAN and CARTER concur in result.

MR. JUSTICE BLEASE disqualified.

MR. JUSTICE COTHRAN: I concur in reversing the Circuit decree in this case, as indicated in the opinion of Mr. Justice Stabler, but upon a different ground from that upon which he bases reversal. I do not agree with certain conclusions reached by him, as I shall indicate.

At the inception of the several transactions which make up the setting of this interesting and very important controversy, the Camden Bank was the owner of the Wooten draft. It forwarded that draft to the Columbia Bank *for collection.* The relation of principal and agent was thus constituted; the Camden Bank, the principal; the Columbia Bank, its agent.

The Columbia Bank, the *agent* bank, then reforwarded the draft to the Hartsville Bank *for collection* locally. The Hartsville Bank then became the subagent of the Camden Bank, the *principal* bank.

At the outset we have, then, clearly before us the relations of the several banks.

To recapitulate the facts: It appears that on June 21, 1926, the Camden Bank, the *principal* bank (the payee and therefore the owner of the Wooten draft), forwarded to the Columbia Bank, the *agent* bank, for collection and credit, a draft drawn by F. M. Wooten upon J. R. Young & Co., of Hartsville, S. C., for $8,849.54. The Columbia Bank immediately reforwarded the draft to the Hartsville Bank for collection locally. The Hartsville Bank collected the draft, passed the proceeds of the collection to the credit of the Columbia Bank, and at some time on June 25th, after the Columbia Bank had closed its doors for the last time, notified that bank of the collection and credit. Thereafter, on the same day, the Columbia Bank notified the Camden Bank that the draft had been paid. At the close of business on June 24th, the Camden Bank had a deposit credit with the Columbia Bank of $4,459.80. On the 25th the credit balance was increased by the book entry of the proceeds of the draft, $8,849.54. On that day drafts of the Camden Bank to the amount of $5,500 were honored by the Columbia Bank. If the credit of $8,849.54 should be eliminated, the Camden Bank would be chargeable with an overdraft of the difference between $5,500 and $4,459.80, $1,040.20, except for the fact that a check of $4,000, which was charged up to the Camden Bank in the estimate of the credit balance above stated of $4,459.80, was never paid; this would make the deposit credit $4,000 more, or $8,459.80, diminished by the $5,500 drafts, leaving a net balance to the credit of the Camden Bank of $2,959.80, against which is to be charged a balance of $3,-392.21 due by the Camden Bank to the Columbia Bank, a net balance to the credit of the Columbia Bank of $432.33.

(I admit that this statement is not reconcilable with the result stated by Mr. Earle, cashier.)

At the close of business on June 25th, the Columbia Bank had a deposit credit, including the proceeds of the $8,849.54 draft, with the Hartsville Bank, $11,694.31. After the appointment of a receiver for the Columbia Bank, this deposit credit was passed to the credit of the receiver, on the books of the Hartsville Bank, and later under a consent order, the actual funds to the above amount were withdrawn from the Hartsville Bank, and "were without prejudice to the rights of the parties hereto, placed in the custody of James E. Peurifoy, receiver, to be by him held in separate fund, pending the determination hereof." (Extract from transcript of record.)

The Camden Bank contends that, as the proceeds of the draft, collected by the Hartsville Bank, which under the circumstances was a subagent of the Camden Bank, did not pass out of the hands of the Hartsville Bank until after the appointment of a receiver for the Columbia Bank, the agent of the Camden Bank, the fund is sufficiently identified as the property of the Camden Bank for the purpose of impressing a trust upon it in its favor, in the hands of the receiver.

The receiver contends, as was held by the decree of his Honor Judge Dennis, that when the Hartsville Bank collected the drafts, passed the proceeds upon the books to the credit of the Columbia Bank, and so notified the latter bank, and when the Columbia Bank charged the Hartsville Bank therewith, passed the proceeds upon its books to the credit of the Camden Bank, and so notified the latter bank, the relation of principal and agent, upon which the alleged trust is based, came to an end; and that the relation of debtor and creditor, as between both the Hartsville Bank and the Camden Bank or the Hartsville Bank, and the Columbia Bank and the Camden Bank, was substituted for the pre-existing relation of principal and agent, which precluded the existence of a trust upon which the Camden Bank relies.

Mr. Justice Stabler, in his opinion, in effect sustains the contention of the receiver that the transactions referred to terminated the relation of principal and agent, but holds that as the transactions were equivalent in law to a deposit by the Camden Bank with the Columbia Bank, the deposit, on account of the known insolvency of the Columbia Bank at the time was a fraud upon the Camden Bank and constituted a trust *ex maleficio* which entitles the Camden Bank to be preferentially paid out of the assets of the receivership estate.

My opinion is that the proceeds of the draft, in the hands of the Hartsville Bank, a subagent of the Camden Bank, not having passed out of the hands of the subagent bank until after the appointment of a receiver, never lost their identity as the property of the Camden Bank and are recoverable by it as such.

It may not make any difference in this case whether this Court should determine that the Camden Bank is entitled to recover upon one theory or the other; but it is conceivable that, under certain circumstances, it might happen that a bank occupying the position of the Camden Bank, by reason of the dissipation of all the assets of an insolvent bank except the fund upon which a trust is claimed, would reap a barren victory in being remitted to the general assets.

I think that the case of *Commercial Nat. Bank v. Armstrong,* 148 U. S., 50; 13 S. Ct., 533; 37 L. Ed., 363, is conclusive upon the point at issue. To avoid confusion I shall refer to the banks involved as the *principal* bank, the bank owning the drafts; the *agent* bank, the bank to which the draft was forwarded for collection; and the *subagent* bank, the bank to which the draft was reforwarded by the *agent* bank for collection locally.

A Philadelphia bank, the *principal* bank, forwarded to an Ohio bank, the *agent* bank, certain drafts for collection, so indorsed. The *agent* bank reforwarded them to certain other banks, *subagent* banks, likewise for collection. The

agent bank failed, having in its hands, or in the hands of other banks, subagent banks, to which the drafts had been sent for collection, locally, the proceeds of the drafts sent to it by the principal bank for collection.    After the appointment of a receiver the principal bank brought an action to recover such proceeds.    The Court held:

1. That the relation between the bank as to *uncollected* paper was that of principal and agent.

2. That the simple collection of a draft by a *subagent* bank did not constitute a commingling of these collections with the general funds of the *agent* bank, and did not operate to relieve such funds from the trust obligation created by the agency, or create any difficulty in specially tracing them.

3. That if the agent bank was indebted to its subagent bank at the time, and the collections by the subagent bank, when made, were entered on its books as a credit upon such indebtedness, they were thereby reduced to possession and passed into the general funds of the agent bank.

In the opinion by Justice Brewer it is said:

"As to such paper, the transaction may be described thus: The plaintiff handed it to the [agent bank]; the [agent bank] handed it to a subagent; the subagent collected it, and held the specific money in hand to be delivered to the [agent bank]; then the failure of the [agent bank] came, and the specific money was handed to its receiver. That money never became a part of the general funds of the [agent bank]; it was not applied by the subagent in reducing the indebtedness of the [agent bank] to it, but it was held as a sum collected, to be paid over to the [agent bank] or to whomsoever might be entitled to it. The [agent bank] received the paper as agent, and the indorsement 'for collection' was notice that its possession was that of agent and not of owner.    In *Sweeny v. Easter*, 1 Wall, 166, 173 [17 L. Ed., 681], in which there was an indorsement 'for collection,' Mr. Justice Miller said: 'The words "for collection" evidently had a meaning.    That meaning was intended to limit the effect which would have

been given to the indorsement without them, and warned the party that, contrary to the purpose of a general or blank indorsement, this was not intended to transfer the ownership of the note or its proceeds.' "

The point does not arise in the case at bar whether, if the Columbia Bank had at the time been indebted to the Hartsville Bank, the latter would have had the right to apply the proceeds of the draft to such indebtedness. The *Armstrong case* holds that it would. It seems to me that the portion of the opinion just quoted renders that conclusion more than doubtful.

Again the Court says:

"If, before the subagent parts with the money or credits it upon an indebtedness of the agent bank to it, the insolvency of the latter is disclosed, it ought not to place the funds which it has collected, and which it knows belong to a third party, in the hands of that insolvent agent or its assignee; and, on the other hand, such insolvent agent has no equity in claiming that this money, which it has not yet received, and which belongs to its principal, should be transferred to and mixed with its general funds in the hands of its assignee, for the benfit of its general creditors, and to the exclusion of the principal for whom it was collected. Whether it be said that such funds are specifically traceable in the possession of the subagent or that the agent has never reduced those funds to possession, or put itself in a position where it could rightfully claim that it has changed the relation of agent to that of debtor, the result is the same. The Fidelity received this paper as agent. At the time of its insolvency, when its right to continue in business ceased, it had not fully performed its duties as agent and collector; it had not received the moneys collected by its subagent. They were traceable as separate and specific funds, and, therefore, the plaintiff was entitled to have them paid out of the assets in the hands of the receiver, for when he collected them from these subagents he was in fact collecting them as the agent

of the principal. No mere bookkeeping betwen the Fidelity and its subagent could change the actual status of the parties or destroy rights which arise out of the real facts of the transaction."

The case of *Armstrong v. National Bank of Boyertown,* 90 Ky., 431; 14 S. W., 411; 9 L. R. A., 553, is strongly in point. There a bank which had become the owner of a draft and may be denominated the *principal* bank, forwarded it to another bank for collection, the *agent* bank; the latter reforwarded it to another bank at the home of the drawee, the *subagent* bank, for collection locally. The subagent bank made the collection, passed the proceeds to the credit of the agent bank, and notified it of the collection and credit. The agent bank entered upon its books a charge against the subagent bank and a credit in favor of the principal bank, and so notified it. Upon the failure of the agent bank before the money was actually transmitted by the subagent bank, the principal bank brought suit against the subagent bank for the proceeds of the draft. By interpleader the receiver of the agent bank was substituted for the subagent bank. The Court held that the principal bank was entitled to the money. In the course of the opinion it was said:

"It has, however, been distinctly, and we think correctly, held that a holder of paper, who delivers it to a bank for collection and credit, is at liberty to treat the bank as an agent until the proceeds are collected by the bank in money, and that authority of the bank to credit the customer does not arise until he has actually received the money" (citing *Levi v. Nat. Bank of Missouri,* Fed. Cas. No. 8,289, 5 Dill., 104; *Marine Bank v. Fulton County Bank,* 69 U. S. (2 Wall.), 256; 17 L. Ed., 785; *Morse, Banks,* § 508; I Dan. Neg. Inst. § 334):

The Court further said:

"We therefore think collection of the draft by the Louisville Banking Company, and entry of the amount to the credit of the Fidelity Bank, did not have the effect of investing

the latter, nor changing its relation to *appellee;* for a mere usage between banks, whereby the collecting bank credits the transmitting bank with the amount collected, instead of remitting, is not alone sufficient to be set up against the real owner of notes or bills to deprive him of his rights" (citing Morse , Banks, § 565; *First Nat. Bank of Clarion v. Gregg,* 79 Pa., 384).

In 2 Michie, Banks, 1439, it is said:

"Where a bank sends commercial paper to another bank for collection and *credit on general account,* the custom between them being to enter the credit only when the paper is collected, the relation between the banks is that of principal and agent until the collection is made and the money received by the second bank; and if the latter sends it to another bank, which collects the paper, but does not remit the proceeds until after the agent bank has failed, the principal can recover the proceeds from the receiver thereof."

In 7 C. J., 625, it is said:

"As a rule, if the bank at the end of the series has collected the proceeds of paper, but before sending or remitting the first bank has failed, the depositor or principal can collect the proceeds from the receiver if these have come into his possession."

At page 626:

"That the correspondent has credited the account of the remitting bank with the proceeds of the collection does not preclude the owner from recovering such proceeds of the correspondent upon the insolvency of the remitting bank."

In *Branch v. United States Nat. Bank,* 50 Neb., 470; 70 N. W., 34, it is said in a case quite similar to that at bar:

"No mere bookkeeping between a bank [agent bank] and the subagent for the collection of money can change the actual status of the parties, or destroy rights which arise out of the real facts of the transaction."

There, as here, it was contended that the fact that the subagent bank had credited to the agent bank the proceeds of

collection changed the relation of the banks from principal and agent to debtor and creditor.

"Where a bank receives a draft with directions to collect, and notify the owner, and its correspondent collects the fund, the mere crediting to the principal bank by the correspondent, upon its own books, of the proceeds, the principal bank not being at the time indebted to the correspondent, does not change the relation of the principal bank to the owner from that of agent to that of debtor. Hence, the bank having failed, and the fund having been paid by the correspondent to the receiver, the owner might follow the fund." (In this quotation the "principal bank" means the "agent bank.") *Guignon v. First Nat. Bank,* 22 Mont., 140; 55 P., 1051.

The principal of trust *ex maleficio* by reason of the receipt of deposits by a bank when in an insolvent condition, I do not think applicable, for the reason that, as I construe the circumstances, there never has been a deposit of the proceeds of collection with the Columbia Bank.

I think that the Circuit decree should be reversed and the case remanded to that Court, with direction to allow the Camden Bank a preferential judgment against the receiver for the amount of the proceeds of collection of the draft in question, less what may be ascertained by a reference to have been the net balance upon transactions other than that of said draft due by the Camden Bank to the Bank of Columbia.

MR. JUSTICE CARTER concurs.