FIRST STATE BANK v. TAYLOR.

Opinion delivered June 8, 1931.

*Walter L. Pope,* for appellant.

*Sam Rorex* and *Nat R. Hughes,* for appellee.

MEHAFFY, J.   On November 13, 1930, the First State Bank, which was at that time operating under the name of the Bank of Knobel, was the owner of a sight draft with bills of lading attached drawn by the Knobel Gin Company on R. A. Downs & Company of Pine Bluff, Arkansas, in amount of $2,398.04, which was on that date sent for collection and credit to the American Exchange Trust Company of Little Rock.

The American Exchange Trust Company received the draft on the 14th of November, 1930, and sent it for collection to the Merchants' & Planters' Bank & Trust Company at Pine Bluff, Arkansas. The draft was paid to the Merchants' & Planters' Bank & Trust Company by the drawee November 15th.   November 15th was Saturday, and was the last day that the American Exchange Trust Company was open for business, and the collection made by the Pine Bluff bank was not sent to the American Exchange Trust Company until after the American Exchange Trust Company became insolvent and closed its doors.

The draft was collected on the last day that the American Exchange Trust Company was doing business and before it closed its doors. On the 20th of November the amount of the draft was paid to the Bank Commissioner into assets of the American Exchange Trust Company, and the Bank of Knobel was on that day notified of the payment. The Bank of Knobel was notified on the 22nd day of November that the draft had not been accounted for.

Both the American Exchange Trust Company and the Merchants' & Planters' Bank & Trust Company closed at 1:00 o'clock, November 15th, and did not thereafter operate as banking institutions. The Bank Commis-

sioner took charge of both these banks as insolvents on November 22.

The appellant filed a petition in the chancery court asking that it have a preferred claim against the American Exchange Trust Company for the amount of the draft. The chancery court dismissed the petition for preference, and the case is here on appeal.

The facts are undisputed, and the question here presented is whether, at the time of the failure of the American Exchange Trust Company, the relation between it and the First State Bank was that of debtor and creditor, or principal and agent, because, if the relation of principal and agent existed, the appellee was the owner of the proceeds of the draft, and entitled to recover it; on the other hand, if the relation of debtor and creditor existed, the proceeds of the draft would go into the general fund and the appellee would be entitled to no preference over other depositors.

We recently said: "Although there is some conflict in the authorities, the general rule is that the title to commercial paper received for collection by a bank and forwarded to its correspondent in the usual course of business does not vest in the bank, to which the paper is sent, but remains in the sending bank until the collection has been made. After the collection is made, then the relation of debtor and creditor exists. Before collection however, if loss occurred, it would be borne by the sending bank, and not by the bank to which the papers were sent. Prior to collection, the relation of principal and agent exists. *Taylor* v. *Corning Bank & Trust Co., ante* p. 757.

It therefore appears from our former decision that the relation of principal and agent existed until collection was made, that is, until the transaction was completed, and the money received by the American Exchange Trust Company. The question is, who was the owner of the proceeds of the draft after the debtor had paid, but before it reached the American Exchange Trust Company? This question can be answered by ascertaining who would

bear the loss, if loss occurred, before it reached the American Exchange Trust Company.

The Pine Bluff bank failed after the collection was made and on the same day that the American Exchange Trust Company failed, but if the money had been stolen or embezzled, or loss had occurred in any other way before the Pine Bluff bank remitted to the American Exchange Trust Company, such loss would have been borne by the First State Bank, the bank which sent it to the American Exchange Trust Company for collection.

If a bank receives drafts for collection and sends them to a correspondent bank and loss occurs, it falls on the owner of the drafts and not on the bank which sent them for collection to its correspondent, unless the sending bank was guilty of negligence in some way that caused or contributed to the loss, and it would then be liable for its negligence, and not because the relation of debtor and creditor existed.

This being true, it follows necessarily that the relation of debtor and creditor did not exist between the Knobel bank and the Little Rock bank until the Little Rock bank actually received the money. "It is likewise well established that a bank receiving a draft for collection merely is the agent of the remitter, drawer, or forwarding bank, and takes no title to the paper or the proceeds when collected, but holds the same in trust for remitting." *Darragh & Co.* v. *Goodman,* 124 Ark. 632, 187 S. W. 673.

The Kentucky court, where the facts were somewhat similar to the facts in this case, said: "That the actual relation between the parties was that of principal and agent is not only shown by the letter of instruction accompanying the draft and the entry mentioned, but the theory of appellant's right to the money is based upon the fact conceded in his pleadings that the draft was sent by one and received by the other for collection and credit. There is however, as contended by counsel, a distinction between an instruction by the owner to a collect-

ing bank to collect and remit, and the one given in this case to collect and credit. But whatever difference in meaning of the two phrases there may be, both convey the idea that the party giving is the owner and the one receiving the instruction is agent. Such then being the relation when the draft was received, the main inquiry is whether anything thereafter occurred which had the legal effect to change the attitude of the Fidelity Bank from that of agent to owner." *Armstrong* v. *Boyertown Nat'l Bank,* 90 Ky. 431, 14 S. W. 411, 9 L. R. A. 553.

The court in the above case also said, after discussing the contract and rules applicable: "But it is well settled that where a bank receives a draft or note for 'collection on account', or, what is the same, 'collection and credit', it does not owe the amount until collected; and, though credit be given therefor prior to collection, the bank is not precluded from canceling such credits, which is regarded as merely provisional, if the paper is dishonored. It would therefore seem just and reasonable, even if there was no authority to support the position, that, if the bank does not, in such case, owe the amount before it is actually collected, it should not be held to have any other right to it than as agent, and that, if not bound by an entry of credit, it should not have power to bind the real owner thereby. It has, however, been distinctly, and we think correctly, held that a holder of paper, who delivers it to a bank for collection and credit, is at liberty to treat the bank as an agent until the proceeds are collected by the bank in money, and that authority of the bank to credit the customer does not arise until he has actually received the money."

The letter of the Bank of Knobel in the instant case, sent, to the American Exchange Trust Company November 13, 1930, was as follows: "We enclose for collection and credit," and the letter of the American Exchange Trust Company sending the draft to the bank at Pine Bluff also stated: "Enclosed find for collection and credit;" and, as stated by the Kentucky court in discus-

sing the phrase "collection and credit" and "collect and remit," whatever other differences in meaning in the two phrases there may be, both convey the idea that the party giving is the owner and the one receiving is the agent.

That the Bank of Knobel was the owner of the drafts cannot be doubted, and under the general rule followed by this court, it was the owner of the proceeds until actually received by the American Exchange Trust Company. This is true, because, if the loss had occurred before the American Exchange Trust Company received the money, it would have fallen on the Bank of Knobel and not on the American Exchange Trust Company.

The only question in this case is whether the title to the draft and proceeds was in the Bank of Knobel until the money was received by the American Exchange Trust Company, and, having reached the conclusion that the appellant was the owner of the proceeds, the decree of the chancellor is reversed, and the cause remanded with directions to enter a decree in accordance with the prayer of the complaint.